1. DIVORCE—CHANGED CONDITIONS—CUSTODY OF INFANT—HABEAS CORPUS.

In *habeas corpus* proceedings by a father against his divorced wife for the custody of a minor son, awarded to him by the decree of the court in the divorce proceedings in a foreign jurisdiction, the finding of the trial court that conditions with reference to the son had so changed as to warrant modification of the decree in regard to his custody, *held*, supported by the testimony.

2. HABEAS CORPUS — CERTIORARI — QUESTIONS REVIEWABLE — SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS.

The rule that, in reviewing a case on certiorari, where there is a question of fact involved, the Supreme Court will examine the evidence only for the purpose of ascertaining whether there is any to support the court's findings, is applicable to *habeas corpus* cases involving the custody of infants.

¹Habeas Corpus, 29 C. J. § 191; ²Id., 29 C. J. § 225.

3. SAME — HUSBAND AND WIFE — CUSTODY OF INFANT CHILDREN ON SEPARATION—STATUTE NOT APPLICABLE WHERE CHILD UNDER 12 YEARS OLD.

> In *habeas corpus* proceedings by a father against his divorced wife for the custody of a minor son, the statute (3 Comp. Laws 1915, § 11484) relative to the custody of minor children when the parents separate has no application, where the son has not yet reached the age of 12 years.

4. SAME—CUSTODY OF INFANT—COMITY NOT CONSIDERED.

> Comity of courts may not be considered in *habeas corpus* proceedings for the custody of an infant, where the future welfare of the child is the vital question, since the good of the child is superior to all other considerations.

5. SAME — EVIDENCE — PHYSICAL CONDITION OF INFANT SUBJECT FOR PROOF—PRIVATE INTERVIEW.

> The finding of the trial court that the boy is of a nervous temperament and not strong physically, based upon a private interview with him, should be disregarded, on review, since said subject is a proper matter for proof and is foreign to the purposes of a private interview.

6. SAME — PRIVATE INTERVIEW PROPER TO ASCERTAIN INFANT'S CHOICE.

> A private interview with the boy by the trial court for the purpose of ascertaining an uninfluenced expression of the boy's actual choice as to which parent he wishes to live with is proper, and it was not necessary for the court to advise counsel of his intention in that respect, although in a judicial proceeding it might seem advisable to do so.

7. SAME—CASES INVOLVING CUSTODY OF INFANTS EQUITABLE IN NATURE—WELFARE OF CHILD PARAMOUNT QUESTION.

> Cases involving the custody of infants are of an equitable nature, and courts are not bound by the bare legal rights of the contending parties or strict technical rules of procedure, but are vested with sound judicial discretion in ascertaining and determining the paramount question of the welfare of the child.

---

[3]Habeas Corpus, 29 C. J. § 101 (Anno); [4]Id., 29 C. J. §§ 101, 108 (Anno); [5]Id., 29 C. J. § 194 (Anno); [6]Id., 29 C. J. § 194 (Anno); [7]Id., 29 C. J. § 101.

8. SAME—CERTIORARI—ORDER AWARDING CUSTODY OF CHILD NOT
   DISTURBED IN ABSENCE OF SHOWING OF ABUSE OF DISCRETION.
     On certiorari to review an order in *habeas corpus* pro-
   ceedings awarding the custody of a nine-year old boy to
   the mother, as against the father, on the finding of the
   trial court that said order was for the best interest of
   the child, it is not disturbed, in the absence of an affirmative
   showing of abuse of judicial discretion.

Certiorari to Ingham; Carr (Leland W.), J.   Sub-
mitted January 14, 1927.   (Docket No. 100.)   De-
cided October 3, 1927.

*Habeas corpus* proceedings by Fred W. Leu against
M. Ethel Leu for the custody of Richard William Leu,
an infant.   From an order denying the petition, plain-
tiff brings certiorari.   Affirmed.

*Thomas, Shields & Silsbee* (*Otto L. Hankison*, of
counsel), for appellant.

*Reynolds, Pierce & Planck*, for appellee.

STEERE, J.   This is a certiorari case to review a
*habeas corpus* proceeding brought to determine the
right, as between his parents, to custody of a nine-year
old boy, named Richard William Leu.   The matrimonial
domicile of the parents was in Lucas county, Ohio,
where, in a contested suit for divorce and custody of
their two minor children before the common pleas
court of that county, a decree was entered on October
25, 1921, granting the father a divorce and giving the
custody, care, and control of their son to the mother
(defendant herein) until he reached the age of seven
years, and thereafter jointly to his father (plaintiff
herein) and his mother during the school period of
each year, and to the boy's mother during the vacation
period of each year until further order of the court.
A younger child, Margaret Louise Leu, was given to

---

ˢHabeas Corpus, 29 C. J. § 227.

the custody of the mother, requiring the father to pay her $4.50 per week for support of each child.

A number of motions for the modification of the decree were subsequently made in that court, at the hearing of which both parties were represented by counsel. On June 16, 1924, the court made a further order, giving the custody of Margaret to the mother, and custody of Richard to the father, except during two months of each summer vacation, when Richard was permitted to visit with his mother who resided with her parents in the village of Okemos, Ingham county, Michigan, and, in settlement of her claim for support of the children, required the father to pay her $1,600. On May 11, 1925, petitioner sought modification of the former decree and orders so as to give him custody of the daughter of the parties during a portion of the summer vacation period. The court, on first hearing of the motion, entered no formal order, but expressed a desire that the parties try the arrangement asked in the petition, in order to find out its practicability. On July 27, 1925, the motion came on for further hearing before that court, resulting in a decretal order modifying its former order or orders, giving the sole custody, care, control, maintenance, and education of Richard to his father, with right of visitation to the mother, and like sole custody, care, etc., of their daughter, Margaret, to the mother, with right of visitation to the father. Both children were then in defendant's custody at her home in Okemos, Michigan. The sum of $1,600 imposed upon the father for support of the children by the order of June 16, 1924, was paid in full to the mother. When the summer vacation ended she did not return Richard to his father, and refused to surrender him when requested. Her avoidance of the jurisdiction of the Ohio court, where those matters of domestic differences were tried out on their merits and attempt to refute the charges of bad faith

by religious and emotional appeal may best be passed by without comment. Her first and frankest reason was, "Because I found out that he (her former husband) was married again."

The two questions calling for the most careful consideration are the welfare or best interest of the child, and comity of courts in that connection. Touching those questions, the return of the circuit judge to this writ of certiorari is in part as follows:

"At the time of the granting of the decree of divorce, the petitioner was residing with his mother, Mary A. Leu, who was, according to the terms of said decree, to have the custody of Richard, jointly with the petitioner, after the child should reach the age of seven years. On or about the 1st of January, 1925, petitioner remarried and since that time has resided with his present wife in a home separate and apart from that of Mary A. Leu. Petitioner's present wife was a witness on the hearing in the present proceeding. It appears that she has been for some time a teacher in the public schools of Toledo and expects to continue her work. During the school year 1924-25 Richard was in the home of his grandmother and after the marriage of his father he so remained. At the close of the school year he returned to his mother in Michigan and has been here since that time. * * * It is the intention of petitioner, if he is awarded the custody of Richard in this proceeding, to take the child, not to the home of the grandmother, but to his own home in Toledo.

"Since the birth of the younger child, Margaret, respondent has made her home with her parents at Okemos in this county. The record shows beyond question that this home is a proper and suitable place for the rearing of children. No claim to the contrary is made. * * * It is obvious that the court by which the decree of divorce was granted was of the opinion that respondent was a proper person to have the custody of minor children, otherwise, the provisions contained in said decree, with reference thereto, would not have been made.

"It is the position of petitioner and his counsel that, under the decree and order of the court of common

pleas of Lucas county, he is entitled, as a matter of right, to the custody of Richard. It is urged that he is in all respects a suitable person to have such custody, that he can furnish a proper home and educational facilities for the child, and that there has been no material change in circumstances since the action of the Ohio court. Respondent insists, on the other hand, that the welfare of the boy requires that he remain with her; that he is doing well in school; that he is happy and content in his present home; that he is deeply attached to his mother and to his small sister; that the children should not be separated in their upbringing; that Richard is still of a tender age and needs a mother's care; that if he is to return to Ohio, he will, of necessity, be intrusted, in part at least, to the care of strangers, owing to the fact that petitioner and his present wife are both working; and that there has been such a change in circumstances as to relieve this court from the obligations of the decree and order of the Ohio court.

"The general rule is well established that a decree of divorce affecting the custody of minor children should be given force and effect in other States with reference to such custody under the circumstances existing at the time the decree is made. It is also recognized that such a decree is not controlling in so far as facts and conditions arising after the rendition of the decree are concerned. Thus, in *Dixon* v. *Dixon*, 76 N. J. Eq. 364 (74 Atl. 995), it was said in part:

"'So far as children are concerned, the situation is, or may be, constantly varying. The parent fit to have the custody of his children today may, by reason of changed circumstances, become unfit tomorrow. The above rule does not prevent the courts of the State, within whose limits the children may be, from considering whether a change in the situation may not call for a new disposition. But the changing circumstances must be, obviously, those that affect the children, not those that concern the parents.'

"In any proceeding of this matter, it is obvious that the matter of prime importance is the welfare of the child whose custody is at issue. * * *

"Have there been such material changes since the orders of the Ohio court were made, with reference to Richard, as should cause this court to refuse to inter-

fere in this proceeding with the mother's custody? Viewing the entire situation as it is presented on the record, I am impressed that this question should be answered in the affirmative.    He is not a strong child physically.    I have talked with him privately in my office and find that he is possessed of a nervous temperament.  He is, without question, deeply attached to his mother and to his small sister.    At this time he is strongly averse to returning to Ohio.    It further appears that this aversion is intensified by the fact that if he is taken from his mother his home will not be where it previously was in Toledo, with his grandmother, but rather with his father and stepmother. * * * Because of the strong attachment that has grown between Richard and his little sister they ought not to be separated.    The conclusion cannot be avoided that if they are so separated they will be reared to all intents and purposes as strangers.

"It should not be overlooked that if Richard returns to the home of his father in Toledo, he will necessarily be, to a certain extent, under the charge of neighbors or hired domestics.    The fact that petitioner and his wife are both working renders such fact unavoidable. The record fully justifies the conclusion that the stepmother will continue in her present vocation.    Such course seems to be in accord with her own desires, and also with those of the petitioner, who, according to his own testimony, regards the home as a 'fifty-fifty proposition,' to the maintenance of which the husband and wife should both contribute.

"Reference has already been made to the fact that the home in which the child now is, is in all respects a suitable and proper home.    His grandparents are deeply attached to him and he to them.    His playmates are suitable for a child of his age and his progress in school indicates that he is contented there. * * * In so far as he is concerned, the circumstances now are different from what they were when he left Toledo last June.

"I am brought to the conclusion that his welfare demands that for the present at least he remain where he now is."

Counsel for appellant contend that the return of defendant was insufficient, that the court failed to give

full faith and credit to the judicial proceedings in Ohio, should not have found conditions had changed since the Ohio decree, committed error in the admission of testimony, erred in its conclusion as to the physical condition of the boy, as there was no testimony upon that subject, and stress is placed upon the fact that the judge examined the boy privately. It will profit no one to go into a detailed discussion of each of the assignments of error. There can be no well-founded claim by any one that the divorce proceedings of the Ohio court are irregular. Emphasis is particularly placed upon the alleged error of the court in finding that the welfare of the boy demanded that he remain in the custody of his mother.

It is apparently agreed by counsel that only questions of law may be determined on certiorari, but counsel for plaintiff say:

"The court will, however, and clearly within its right and duty, examine the record to determine whether there has been any evidence of any changed condition, such as the court below has, in his opinion, set forth that he has found. There has in fact been no changed condition in the parties"—

and argue at length the merits of the more or less conflicting testimony. There were 24 witnesses sworn before the circuit judge, nearly equally divided between the parties, and the great bulk of their testimony related to what the changed condition of the boy would be if his custody was given to the father, what it was before the father married the second time, and what it is now at Okemos. We cannot agree with counsel that there is no testimony to support the court's findings relative to changed conditions. There is testimony to support the conclusions announced. As to the law in a certiorari proceeding where there is a question of fact, it was long ago said by this court, in *Corrie* v. *Corrie,* 42 Mich. 509: "We do not re-

examine on certiorari the evidence upon the hearing in *habeas corpus.*" Except, of course, to ascertain from the evidence, when returned, whether it contains testimony as a basis for the court's findings. Upon that rule of law in certiorari to *habeas corpus, vide,* also, *In re Sneden,* 105 Mich. 61 (55 Am. St. Rep. 435); *Carpenter* v. *Carpenter,* 149 Mich. 138; *Smith* v. *Kiel,* 150 Mich. 417; *In re Gould,* 174 Mich. 663. The statute (3 Comp. Laws 1915, § 11484) relative to custody of minor children when parents separate has more than once been construed. Richard is not yet 12 years of age, and it has no application to the instant case. See cases cited in footnotes to the statute.

On the question of comity, this court said in the *habeas corpus* case of *In re Stockman,* 71 Mich. 180:

"Comity cannot be considered in a case like this, when the future welfare of the child is the vital question in the case. The good of the child is superior to all other considerations. It is the polar star to guide to the conclusion in all cases of infants, whether the question is raised upon a writ of *habeas corpus* or in a court of chancery. The infant's desire in determining where she shall reside, if of sufficient age and uninfluenced, is always listened to with interest, and in this case we have it marked and most emphatic. She wants to remain where she is."

It is particularly urged that the judge's private examination of Richard without informing plaintiff or his counsel of an intention to do so was prejudicial, as indicated by the opinion in which facts and conclusions thereon, unsupported by the testimony, appear evidently derived from that interview. The finding that Richard was of a nervous temperament and not a strong child physically was a proper matter for proof and foreign to a private interview to ascertain his wishes. It may be disregarded.

Counsel do not question the right of the court to ascertain the wishes of the boy, but apparently con-

tend it should be done publicly, in presence of counsel, with him called as a witness. It is true, as counsel point out, that Richard was of sufficient age to have been called as a witness on request of either party or by the court. Neither party saw fit to call him, which, under the circumstances shown, was commendable. There was testimony as to manifestations of affection outside the court-room between Richard and both of his parents while the case was being heard. Mr. Bradbeer, the child's grandfather, testified that when the boy met his father outside of the court-room they greeted each other affectionately, the boy put both arms about his father's neck and they kissed one another, which was the same type of greeting he described the boy had given his mother and, so far as witness observed, he exhibited the same type of affection for both father and mother. Under such a situation it was wise and considerate on the part of all to refrain from publicly pressing the child in open court by direct and cross-examination as a witness to take sides or make choice between his parents.

While it might seem more proper, in a judicial proceeding, for the court to advise counsel of his desire and intention to interview the child privately as to his wishes, we find no authority to the effect that it is compulsory. A private, informal interview with the child by the court would seem to be the natural and most effectual way to obtain an unembarrassed and uninfluenced expression of the child's actual choice. Numerous cases are reported which show that course was adopted by the court before reaching a final decision. *Vide,* Hurd on Habeas Corpus (2d Ed.), p. 531 *et seq.* In the leading case of *Pool* v. *Gott,* 14 Law Rep. (Mass.) 269, there quoted from at length, decided by Chief Justice Shaw, it appears that the court took occasion to examine the child in private. It is well settled that cases of this kind are of an equitable

nature and courts are not bound by the bare legal rights of the contending parties or strict technical rules of procedure, but are vested with a sound judicial discretion in ascertaining and determining the paramount question of the welfare and best interest of the child (12 R. C. L. p. 1215).

We cannot affirmatively find an abuse of discretion nor conclude this court would be justified in disturbing the conclusion reached by the circuit judge.

The proceeding is dismissed, with costs to the appellee.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.