MOLLOY v MOLLOY

Docket No. 224179. Submitted April 16, 2001, at Lansing. Decided September 4, 2001, at 9:00 A.M. Leave to appeal granted, 465 Mich 946.

Peter Molloy obtained a divorce from Wendy Molloy in the Wayne Circuit Court, Sheila Gibson Manning, J., which awarded the parties joint legal and physical custody of their child, but effectively transferred physical custody of the child from Michigan, with the defendant, to California, with the plaintiff. The trial court had granted a motion in limine by the plaintiff for an in camera interview of the child concerning the child's preference in terms of custody and matters relating to fault of the parties. In determining custody, the trial court considered what the child said in the interview regarding the child's preference in terms of custody and regarding several of the other best interests factors delineated in § 3 of the Child Custody Act, MCL 722.23. The defendant appealed. The Court of Appeals, COLLINS, P.J., and JANSEN and ZAHRA, JJ., affirmed the decision of the trial court, with Judges JANSEN and COLLINS stating that they were constrained by MCR 7.215(H)(1), now 7.215(I)(1), to follow *Hilliard v Smith*, 231 Mich App 316 (1998), which held that an in camera interview to determine the child's reasonable preference in terms of custody need not be limited to aiding in the assessment of that factor alone, but may encompass any matter relevant to the custody decision. Had the majority not been so constrained, it would have reversed the judgment of the trial court and held that an in camera interview should be confined to those matters reasonably necessary to enable the trial court to determine the preference of the child. 243 Mich App 595 (2000). The Court of Appeals, following a poll of its judges, issued an order partially vacating the Court of Appeals opinion in this case and convening a special panel to resolve the conflict that would have been created between the panel in *Hilliard* and the majority in *Molloy* but for the provisions of MCR 7.215(I)(1). 243 Mich App 801 (2001).

After consideration by the conflict resolution panel, the Court of Appeals *held*:

A child's in camera interview during a custody proceeding should be limited to a reasonable inquiry into the child's parental preference and should be recorded and sealed for appellate review. The scope of the interview is subject to such limit because the purpose

of the interview is to lessen the emotional trauma for the child and protect the child from openly having to choose sides. The interview must be recorded because a parent's custodial rights are an important interest that warrants due process protection under the state and federal constitutions, and because a record would serve to protect a parent's due process rights in the event that the interview exceeds the proper limited scope. If the information provided in an in camera interview affects a child custody factor other than the child's reasonable preference, the trial court must permit the parties access to the record of the interview and provide them an opportunity to be heard.

Reversed and remanded.

DIVORCE — CHILD CUSTODY — PREFERENCE OF CHILD — IN CAMERA INTERVIEWS.

An in camera interview of a child during a child custody proceeding should be limited to a reasonable inquiry into the child's parental preference and should be recorded and sealed for appellate review; if information provided in an in camera interview affects a child custody factor other than the child's reasonable preference, the trial court must permit the parties access to the record of the interview and provide them an opportunity to be heard (MCL 722.25).

*Butzel Long* (by *James A. Gray, III*), for the plaintiff.

*Judith A. Curtis*, for the defendant.

Before: BANDSTRA, C.J., and HOOD, CAVANAGH, SAAD, MARKEY, METER, and COOPER, JJ.

COOPER, J. Pursuant to MCR 7.215(I)(1), this special panel was convened to resolve the conflict between the prior opinion in this case, 243 Mich App 595; 628 NW2d 587 (2000), and *Hilliard v Schmidt*, 231 Mich App 316; 586 NW2d 263 (1998).[1] 243 Mich App 801 (2001). The original *Molloy* panel, in compliance with MCR 7.215(I)(1), followed this Court's holding in *Hilliard, supra*, which held that an *in camera* interview

---

[1] MCR 7.215 was amended, effective April 1, 2001, to repeal and replace certain language. In the process, former subsections D-H were redesignated as subsections E-I and were otherwise unchanged. See 463 Mich lxii-lxiv (2000).

to determine the reasonable preference of a child whose custody was at issue need not be limited to aiding in the assessment of that factor alone; rather, the interview may encompass any matter relevant to the custody decision. Were it not for the precedential effect of *Hilliard*, a majority of the *Molloy* panel would have reversed the trial court's decision under the best interest factors and remanded for a new child custody hearing pursuant to *Burghdoff v Burghdoff*, 66 Mich App 608; 239 NW2d 679 (1976), which held that an *in camera* hearing should be confined to those matters reasonably necessary to enable the judge to determine the preference of the child.[2] We resolve this conflict by holding that the purpose and questioning of an *in camera* interview is limited to determining the child's preference.

In *Hilliard*, the plaintiff complained that the trial court's *in camera* interview of the parties' older son, whose custody was not in dispute, violated due process because it went beyond ascertaining their younger son's preference. Our Court noted that to further the predominant concerns of the welfare of a child, "an in camera interview may extend to any matter relevant to the trial court's custody decision." *Hilliard, supra* at 321. *Hilliard* declared that the due process rights of parents in a custody dispute should not be as stringently applied as they are in the termination of parental rights cases. *Id.* at 319. Rather, *Hilliard* said that the child was often the best source of candid information regarding the best interest factors, set forth in the Child Custody Act, MCL 722.23, and

---

[2] The *Hilliard* panel was not required to follow the rule of law established by *Burghdoff*, because *Burghdoff* was decided in 1976. Michigan Court Rule 7.215(I)(1) designates Court of Appeals opinions published after November 1, 1990, as having binding precedential value.

that the potential for misuse of a child's recorded statement of preference was greater than the benefit. *Hilliard, supra* at 320, 326. *Hilliard* reasoned that children enmeshed in a custody dispute situation should not be further subjected to "the additional distress resulting from cross-examination and testifying before the parents." *Id.* at 320, citing *Lesauskis v Lesauskis*, 111 Mich App 811, 814-815; 314 NW2d 767 (1981).

Conversely, our Court in *Burghdoff* held that "sound policy requires that . . . [an *in camera*] conference be restricted to those matters reasonably necessary to enable the circuit judge to determine and understand the preference of the child." *Burghdoff, supra* at 612. *Burghdoff* declared that questions concerning the moral fitness of the parties were outside the "intent of the conference" and thus improper. *Id.* at 613. *Burghdoff's* progeny emphasized the fact that because an *in camera* conference is limited to the child's preference, and excludes facts irrelevant to that purpose, there is no need to permit counsel's presence or require that the interview be admitted at trial. See *Lesauskis, supra* at 815-816; *Impullitti v Impullitti*, 163 Mich App 507, 510; 415 NW2d 261 (1987).

After due consideration, we find that a child's *in camera* interview during custody proceedings must be limited to a reasonable inquiry into the child's parental preference. As stated in the previous *Molloy* opinion, the purpose of the *in camera* interview is to lessen the emotional trauma for the child and protect the child from openly having to choose sides. *Molloy, supra* at 601. However, when the *in camera* interview is used for fact finding it invites numerous due process problems. Thus, we are further compelled to

mandate that in the future all *in camera* interviews with children in custody cases be recorded and sealed for appellate review. We also require that the record of these interviews be made available to the parties if the interview affects an additional child custody factor and that information makes a difference in the outcome of the case.

Courts have historically allowed *in camera* interviews with children in recognition of the emotional trauma felt by a child required to testify in open court or in front of his or her parents.[3] *Impullitti, supra* at 510; *In re Crowder*, 143 Mich App 666, 668-669; 373 NW2d 180 (1985); *Lesauskis, supra* at 814-816; *Burghdoff, supra* at 612-613. However, this enlightened and sensitive focus on the child's well-being should not permit courts to ignore issues of fundamental fairness in proceedings affecting a parent's custodial rights. The *in camera* interview with the child is not meant to be a reliable form of fact finding. See *Molloy, supra.*

Studies in child development suggest that the real purpose of an *in camera* interview is to provide a child with an opportunity to make a "psychological statement . . . of how he or she has resolved (or failed to resolve) the inevitable loyalty conflict that divorce and separation creates." Levy, M.D., *The meaning of the child's preference in child custody determination,* 8 J of Psychiatry & L 221, 223 (1980).[4] We note that

---

[3] In a child custody dispute it is "wise and considerate on the part of all to refrain from publicly pressing the child in open court by direct and cross-examination as a witness to take sides or make choices between his parents." *In re Leu*, 240 Mich 240, 249; 215 NW 384 (1927).

[4] See also Lombard, *Judicial interviewing of children in custody cases: an empirical and analytical study,* 17 U C Davis L R 807 (1984) (containing the results of a survey of Michigan judges regarding their experiences with *in camera* interviews and children in custody cases).

many children have difficulty simply expressing their viewpoints. "Even a child mature enough to understand the uniqueness and privacy of his own mind may lack the sophistication to appreciate the conflicts and ambiguity in his views." Buss, *Confronting developmental barriers to the empowerment of child clients,* 84 Cornell L R 895, 928 (1999). A child's viewpoint can also be influenced by a desire not to hurt or offend a parent out of loyalty, fear of reprisal, or a combination of the two. *Id.* at 943, n 159. Thus, the proposition that a child, who is going through one of the most emotional and trying experiences in his or her life, can briefly and clearly relate a viewpoint on a custodial preference to a virtual stranger (the judge) may not be realistic.

Assuming arguendo that the child is able to express a preference, the interview should not take place in a vacuum. Inquiry must be made in order to test the authenticity, the motives, and the consistency of the preference. Often a good interview will result in information that affects other child custody factors and therein lies the problem.

### I. DUE PROCESS

Both the federal and state constitutions guarantee the right to due process of law. US Const, Am XIV; Const 1963, art 1, § 17. "Due process requires fundamental fairness and applies to any adjudication of important rights." *Hilliard, supra* at 319. However, due process is a flexible concept and only requires the procedural protections that a particular situation warrants. *Mathews v Eldridge,* 424 US 319, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976). The three elements that need to be evaluated to decide what due process

requires are the importance of the private interests at stake, the government's interest, and the probability that the procedures used would lead to erroneous decisions. *Lassiter v Dep't of Social Services*, 452 US 18, 27; 101 S Ct 2153; 68 L Ed 2d 640 (1981), citing *Mathews, supra.*

### A. PRIVATE INTERESTS IN CUSTODY DISPUTES

*Hilliard, supra* at 319, acknowledges that a parent's custodial rights are an important interest that warrants some form of due process protection. However, *Hilliard* says that the scope of this due process protection does not extend to information a judge receives regarding the best interest factors during an *in camera* interview with the child. *Id.* In support of its position that due process rights are limited in custody cases, *Hilliard* cites *Haller v Haller*, 168 Mich App 198, 200; 423 NW2d 617 (1988), which found that child custody proceedings did not create a due process right to counsel. The rationale behind *Haller* was that the state was not a party to the action and that its sole interest was to protect the best interests of the child rather than the parent. *Haller* further suggested that the fact that custody decisions were subject to modification did not mandate the stringent due process considerations required in termination of parental rights cases.[5] *Id.*

We agree that custody decisions and termination of parental rights are different situations, but find that both necessitate due process of law. While custody

---

[5] In a termination proceeding, this Court stated that "a parent's right to the custody of his or her child is an important liberty interest . . . ." *In re Rose*, 174 Mich App 85, 88; 435 NW2d 461 (1989), rev'd on other grounds 432 Mich 934 (1989).

decisions are modifiable there is an important liberty interest in the development of the parent-child relationship. *Troxel v Granville*, 530 US 57, 65-66; 120 S Ct 2054; 147 L Ed 2d 49 (2000).[6] The loss of a parent's presence and contribution at each stage of a child's development cannot be compensated for after a modification of custody. Additionally, the standard of proof to be met in order to change an "established custodial environment" prevents change of custody except in the most compelling cases. MCL 722.27(1)(c); see also *Ireland v Smith*, 214 Mich App 235; 542 NW2d 344 (1995). Moreover, there is a difference between a parent's right to counsel in a custody proceeding and the right to fundamental fairness. Despite the existence of counsel, judges are currently allowed to hear all manner of information during an *in camera* interview and there is no requirement that this information be taken under oath or made available to the parties.

### B. GOVERNMENT'S INTEREST IN CUSTODY DISPUTES

The interest of the state is the second factor to be considered in determining due process requirements. Michigan law has clearly established that the overriding concern for courts in custody matters must be the best interests of the child. MCL 722.25; *Hawkins v Murphy*, 222 Mich App 664, 674; 565 NW2d 674 (1997). *Haller, supra* at 199-200, addressed this issue when it refused to allow parents the right to counsel in custody hearings because it did not further the state's ultimate goal. However, unlike *Haller's* objec-

---

[6] See also Lombard, *supra* at 821 (suggesting that a few hours of visitation with a young child may have an impact on the strength of the parent-child relationship in the future).

tion to providing a right to counsel in custody cases, requiring *in camera* interviews to be limited would actually promote the state's interest.

A child's preference has the potential to contribute to a trial court's decision regarding custody. In fact, the Child Custody Act specifically includes the child's preference as one of the eleven factors to be considered in determining the best interests of the child. MCL 722.23(i).[7] Because the information provided by the child during an *in camera* conference potentially provides support for a trial court's decision, allowing children to be interviewed in private about factors

---

[7] The following are the best interest factors contained in the Child Custody Act that are required to be considered in a ·child custody determination:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.25.]

beyond their preference, as suggested by *Hilliard*, *supra* at 320, only increases the likelihood that the parties would be denied access to information and analysis affecting the trial court's decision.

We further emphasize the fact that the Legislature did not specifically indicate the manner in which a judge should ascertain the child's preference. MCL 722.23. Significantly, the Child Custody Act does not require the use of *in camera* interviews to obtain this information but merely enumerates the factors that a judge must consider in making a custody decision.[8]

Nearly fifty years ago, the Michigan Supreme Court suggested that sound practice dictated that a judge interview a child in private. The Court also stated that any objections to this could be cured by the presence of counsel and a judicial summary of the findings. *Bowler v Bowler*, 351 Mich 398, 406-407; 88 NW2d 505 (1958). In an earlier case, the Supreme Court noted that absent an objection when the trial court interviewed a minor child and when the record failed to establish that the interview was a determinative factor in the court's decision, such circumstances indicated that the *in camera* interview was not prejudicial to the parties' rights. *Brugel v Hildebrant*, 332 Mich 475, 484; 52 NW2d 190 (1952). These Supreme Court decisions were issued prior to legislative enactment of the Child Custody Act of 1970, MCL 722.21.

There is no current procedure in force to ensure that the information provided during *in camera* hearings is truthful or even correctly understood.

---

[8] Interestingly, a majority of judges in the *Lombard* survey recommended that other experts conduct the interviews. *Lombard, supra* at 816.

C. POSSIBILITY OF ERRONEOUS DECISIONS

We know that the task of the trial judge to interpret a child's preference is often somewhere between difficult and impossible. Indeed, interviewing children in custody cases has been rated by judges as one of the toughest problems they face in domestic relations cases.[9] While we defer to the integrity and skills of the trial judge to make such a finding, given the complexities involved in interviewing children in custody cases, there is an increased likelihood that even an experienced interviewer may find it difficult to determine "whether the child is truthful, intentionally deceptive, or unwittingly led . . . ." Buss, *supra* at 915.[10]

Additionally, the time constraints under which trial judges are forced to work only serve to aggravate the problem. Michigan judges who participated in a survey concerning child interviews indicated that a typical *in camera* interview with a child lasted about eighteen to nineteen minutes. Lombard, *Judicial interviewing of children in custody cases: an empirical and analytical study*, 17 U C Davis L R 807, 815 (1984). During this time, the judges usually tried to relax and get acquainted with the child before they began an inquiry about the child's preference. See *id.* at 815-816. Given all the factors that a trial judge must consider, the potential for an eighteen-minute interview to successfully provide an accurate understanding of just the child's preference is limited.

---

[9] See Stollak, Casbergue & Kreider, *A workshop for judges involved in child custody and other domestic relations disputes*, 9 J of Psychiatry & L 469, 470 (1981); see generally Levy, *supra*; Lombard, *supra*.

[10] See also Lombard, *supra* at 824; Stollak, *supra* at 471.

Furthermore, while we require that these interviews be limited to reasonable questions to discover the preference of the child, a thorough examination is needed to ascertain the child's rationale for its preference. *Id.* at 828-829. Often direct questions regarding a child's preference may not provide the information that the court needs.[11] "Children do not have a single, fully formed viewpoint that adults can access simply by asking the right questions." Buss, *supra* at 915. Thus, in the process of determining a child's preference, a judge frequently learns additional information that could influence the decision-making process. For instance, fifty-four percent of the judges interviewed in the Lombard survey acknowledged receiving information regarding abuse or mistreatment during *in camera* interviews with children. Lombard, *supra* at 814.

The recent case of *Foskett v Foskett*, 247 Mich App 1; 634 NW2d 363 (2001), exemplifies the serious due process problems that arise from these *in camera* interviews, particularly when the interview is not recorded. In that case, the trial court formed an "impression" of the alleged problems in the mother's home during an *in camera* interview with the child. The actual record established nothing more than allegations of such problems:

> The only conceivable explanation to account for the stark difference between the evidence presented on the record that amounted to nothing more than mere *allegations* of the mother's violent conduct and the trial court's *conclusions* that the mother has a "volatile," "nasty" temper and further exhibits signs of mental illness, is the intervening in camera interview with the children that was not, in any way, made

---

[11] Stollak, Casbergue & Kreider, *supra* at 479.

part of the reviewable record. Thus, even a most cursory review of the existing record reveals that the trial court's in camera interview strongly influenced, if not *completely* determined, its factual findings on all the best interests factors. However, to maintain a certain level of judicial integrity, and to provide for meaningful appellate review, there must be a modicum of extraneous testimony on the record that would, at the very least, support a reasonable inference attesting to the trustworthiness and indeed the veracity of the information obtained through the in camera interview with the children. [*Foskett, supra* at 10 (emphasis in original).]

The *Foskett* Court ultimately concluded that the trial court's findings were against the great weight of the recorded evidence and that the trial court abused its discretion in changing the children's custodial environment. *Id.* at 13. Thus, information detrimental to the parent seeking custody may influence a judge's decision without any guarantees of its accuracy. *Id.*[12] The parents are denied access to this information and have no opportunity to present contradictory evidence.

## II. A NATIONWIDE TREND

A nationwide survey indicates that most states require that *in camera* conversations with children involved in custody cases should be recorded and some even require the presence of counsel.[13] For

---

[12] See also Lombard, *supra* at 815, n 33.

[13] See *Berryhill v Berryhill*, 410 So 2d 416 (Ala, 1982); *Mattocks v Mattocks*, 66 Ark App 77; 986 SW2d 890 (1999); *In re Katrina L*, 200 Cal App 3d 1288; 247 Cal Rptr 754 (1988); Colo Rev Stat 14-10-126; *Nowak v Nowak*, 546 So 2d 123 (Fla App, 1989); *King v Scarborough*, 231 Ga 747; 204 SE2d 174 (1974); *Strain v Strain*, 95 Idaho 904; 523 P2d 36 (1974); *Gingrey v Lamer*, 315 Ill App 3d 486; 248 Ill Dec 478; 734 NE2d 186 (2000); *Conkling v Conkling*, 185 NW2d 777 (Iowa, 1971); *Holt v Chenault*, 722 SW2d 897 (Ky, 1987); *Hicks v Hicks*, 733 So 2d 1261 (La App, 1999);

example, Ohio requires a record, kept under seal for appellate review, to be made of any *in camera* interview with children involved in custody disputes. *Donovan v Donovan*, 110 Ohio App 3d 615, 620; 674 NE2d 1252 (1996). The Ohio court stated that such measures will "ensure that an appellate court can effectively review the trial court's decision pertaining to custody matters." *Id.* An Illinois court commented that "[t]he absence of a transcript of the *in camera* interview is prejudicial to the party who is not granted custody and provides no means of determining whether the trial court's decision constituted an abuse of discretion." *Gingrey v Lamer*, 315 Ill App 3d 486, 487; 248 Ill Dec 478; 734 NE2d 186 (2000). A Virginia court noted that the due process rights of parents are not protected "unless a record of the evidence received is prepared." *Haase v Haase*, 20 Va App 671, 682; 460 SE2d 585 (1995). That court further decided that if either parent failed to consent to an *in camera* interview, a transcript must be prepared and made available to the parties for their review. *Id.* Additionally, several states have enacted statutes mandating the recording of *in camera* interviews with children in custody disputes. See Minn Stat 518.166; Mo Rev Stat 452.385; Mont Code Ann 40-4-214. Clearly, the belief that *in camera* interviews with children need to be recorded is one held by the

---

*Marshall v Stefanides*, 17 Md App 364; 302 A2d 682 (1973); Minn Stat 518.166; Mo Rev Stat 452.385; Mont Code Ann 40-4-214; *MP v SP*, 169 NJ Super 425; 404 A2d 1256 (1979); NM Stat Ann 40-4-9; *Scott v Scott*, 193 AD2d 1103; 598 NYS2d 413 (1993); *Horton v Horton*, 12 NC App 526; 183 SE2d 794 (1971); *Donovan v Donovan*, 110 Ohio App 3d 615; 674 NE2d 1252 (1996); *Cyran v Cyran*, 389 Pa Super 128; 566 A2d 878 (1989); *Haase v Haase*, 20 Va App 671; 460 SE2d 585 (1995); Wash Rev Code 26.09.210; *Rose v Rose*, 176 W Va 18; 340 SE2d 176 (1985); *Seelandt v Seelandt*, 24 Wis 2d 73; 128 NW2d 66 (1964).

majority of courts. While not binding authority in Michigan, these cases demonstrate an increasing nationwide concern with the due process rights of parents and *in camera* interviews of children.

### III. REQUIREMENT OF APPELLATE RECORD

Given the important individual rights and state interest present, coupled with the potential for error under the current procedures, we find that the requirement of a record in every *in camera* interview with a child during a custody dispute is necessary for purposes of meaningful appellate review and to ensure the integrity of the custody decisions. As the *Foskett* Court stated:

> The most difficult aspect of the case at bar is that almost all the trial court's factual findings are not reviewable. . . .
>
> *       *       *
>
> If a trial court relies significantly on information obtained through the in camera interview to resolve factual conflicts relative to any of the other best interests factors and fails to place that information on the record, then the trial court effectively deprives this Court of a complete factual record on which to impose the requisite evidentiary standard necessary to ensure that the trial court made a sound determination regarding custody. Indeed, decisions that will profoundly affect the lives and well-being of children cannot be left to little more than pure chance. These critical decisions must be subject to meaningful appellate review. [*Foskett, supra* at 9, 10-11.]

Clearly, without a record of this information, this Court cannot effectively determine if the trial court's findings of fact went against the great weight of the evidence. *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994) (requiring this Court to review the

record before substituting its judgment). Absent a record of the *in camera* interview, there is no way an appellate court can conduct a meaningful review to ensure that the best interests of the child are achieved.

To further protect the rights of the parents and preserve the state's interest in obtaining an accurate accounting of the best interest factors, there must be some safeguards in place. Thus, when information affecting another best interest factor under the Child Custody Act is obtained in an *in camera* meeting with the judge and may affect the court's decision, a copy of the record must be made available to the parties so that the parties are afforded an opportunity to refute or challenge the veracity of the information obtained. These precautions will serve to protect a parent's due process rights to a fair trial, foster the state's ultimate goal of protecting the best interests of the child, and decrease the possibility that child custody decisions will be based on inaccurate information.

Accordingly, we reverse the trial court's decision and remand the matter to the trial court because the scope of the *in camera* interview exceeded a reasonable inquiry into the preference of the child. In the future, all *in camera* interviews with children in custody cases shall be recorded and sealed for appellate review. The manner in which the interview is to be recorded, e.g., stenographic, audiotape, or videotape, is left to the discretion of the trial judge given the circumstances of each case and the equipment available to his or her court. The essential feature of the recording must be that it sufficiently memorializes the interview to allow an informed review should a subsequent claim be made in the trial or appellate court

that facts elicited during the interview were utilized in a material way to decide child custody factors other than the minor child's preference. Moreover, if the information provided in the *in camera* setting does exceed the scope of preference to the extent that it affects the custody decision, the trial court must permit parties access to the record and the opportunity to be heard.

Reversed and remanded. We do not retain jurisdiction.