*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL JOSEPH GORDON,

        Plaintiff-Appellant,

v

KIMBERLY SUZANNE GORDON,

        Defendant-Appellee.

UNPUBLISHED
June 12, 2026
10:24 AM

No. 376389
Leelanau Circuit Court
Family Division
LC No. 2021-010641-DM

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Plaintiff, Michael Joseph Gordon, appeals as of right a June 25, 2025 decision and order after de novo review hearing (Order) that adopted an April 4, 2025 referee recommendation and order (Referee Recommendation) to the extent that it awarded primary physical custody of his three minor children to defendant, Kimberly Suzanne Gordon, and fined plaintiff for contempt of court for denying defendant over eight months of weekly parenting time to defendant. We affirm.

## I. BRIEF FACTUAL SUMMARY

The parties are parents of four children, three of whom are minor daughters between the ages of 16 and 11. They divorced in November 2021, and pursuant to the judgment of divorce, exercised a week on/week off parenting-time schedule with flexibility to accommodate the children's needs and their respective schedules. In May 2022, defendant moved back into the marital home, which had been awarded to plaintiff in the judgment of divorce, and the parties co-parented and attempted reconciliation of their relationship. In July 2024, the parties again separated. Defendant had begun a relationship with her significant other and she moved into a residence that she shares with him.

The parties' ability to coparent changed at this point. The children spent a few overnights with defendant at her new residence; however, in July 2024, both parties filed motions regarding custody, parenting time, and support. Each requested full physical custody of the children, among other things. The basis of plaintiff's motion was the children's emotional state and their expressed desire not to live with defendant and her significant other. Defendant's motion described abuse in

her relationship with plaintiff and claimed that he was turning the children against her. Per order dated July 29, 2024, the trial court denied both parties' motions, finding that each "make[s] serious allegations against the other's ability to care for the children" with "starkly contrasting accounts." The trial court referred the matter to the referee "for an early status conference and, if not resolved, an expedited hearing."

This status conference was held on August 13, 2024, and eight days later, defendant filed a motion to show cause for denial of parenting time. On November 22, 2024, following mediation, the court entered a stipulation and order that included an interim mediation agreement signed by both parties on November 22, 2024 (Interim Order). The Interim Order required defendant and the children to participate in reunification therapy facilitated by a licensed clinical social worker, and also temporarily modified the parenting-time schedule to provide defendant with parenting time on specific dates, times, and locations, including every Saturday beginning December 7, 2024. The Interim Order expressly included the parties' agreement that "an objective of the reunification therapy and the temporary modified parenting time [was] to strengthen the relationship between Defendant and the minor children so as to resume the week on/week off parenting time schedule[d]."

The difficulties between the parties continued. On December 16, 2024, defendant filed a motion to have her name removed from the mortgage on the marital home because she claimed that plaintiff refused to do this even though the marital home was awarded to him in the judgment of divorce in exchange for a marital equity payment. Plaintiff's attorney represented in court that her client was not opposed to this, and the judgment of divorce was amended to reflect this on March 17, 2025.

On March 13 and 19, 2025, the referee held an evidentiary hearing on the parties' motions to change custody. Defendant also asked that plaintiff be held in contempt of court for denying her parenting time with her children for almost 32 weeks as of the date of the hearing.

Evidence was presented at the hearing that the children were not happy that defendant moved out of the marital home and that they called plaintiff in tears when they were at defendant's home, wanting to return home. Plaintiff testified that he was "not exactly sure what happened. But something not safe happened. I mean, they didn't feel safe, they were scared to go there." He also testified that he appeared at their school to pick them up even on the days of defendants' parenting time, at the children's request, despite defendant asking him not to do this, and he identified no material consequences imposed if or when one or more of the children refused to go to defendant's residence or to meet for her parenting time. While plaintiff testified that he did not really know defendant's significant other, he acknowledged that before the divorce, he and defendant socialized with him and his ex-wife, and that their children spent time together. None of the witnesses who testified articulated any specific safety concern with defendant's residence, her significant other or his children, nor was any evidence presented during the proceedings to support plaintiff's concerns. And defendant's testimony and evidence presented regarding her current residence demonstrated to the referee and the court that this residence was more than adequate.

Defendant testified about at least one instance of physical abuse by plaintiff toward her, i.e., a "body bump" during the exchanges to pick up the children (which plaintiff denied), and at

least one instance in which plaintiff undermined her attempts to discipline the children. In the latter instance, one child left defendant's residence and drove to plaintiff's home in tears. Plaintiff testified that he did not discipline this child or bring her back to defendant because the child's story did not line up with defendant's as to the events that occurred that day. He testified that it was unlike this child to cry or exhibit such strong emotions, and, therefore, he felt the issue was bigger than the lost privileges that defendant imposed.

Defendant felt the children were being manipulated by plaintiff. Since July 2024, she testified that she had 23 hours total in visits with the children. One child did not attend the parenting time ordered in the parties' stipulated interim temporary mediation agreement, but the younger two children came. She testified as to a positive interaction with all three children during a visit to see her father, who was seriously ill. However, when defendant's father passed away, plaintiff told defendant that none of the children wanted to go to the funeral. Two of them ultimately attended. Defendant understood that the week on/week off schedule would continue in January 2025, and this did not occur, nor was she allowed to see the children on Saturdays as agreed to in the Interim Order.

The licensed therapist assigned to provide reunification therapy testified that the children expressed anger toward defendant and that defendant initially reacted defensively to these feelings. Defendant made progress, however, as therapy continued. Plaintiff was engaged in scheduling and ensuring the children were at the therapy reunification sessions. The therapist testified that, overall, "the girls do need their mom . . . I always believe that there is a chance for kids to reunify, but it's got to be on their terms." At one point, the therapist recalled one of the children stating that she would come live with her mom, while another expressed anger, stating that she was not okay with going and seeing her mom, and that she doesn't like her mother's significant other or his kids. All three children expressed to the therapist that they did not feel safe at defendant's home. However, on at least one occasion, the therapist's note stated that a statement one of the children made to her sounded scripted.

In the Referee Recommendation, the referee found proper cause to revisit the custody order entered with the judgment of divorce in 2021 because an established custodial environment existed with both parents and that plaintiff's "attempts to destroy the established custodial environment only served to hurt the children." The referee evaluated each factor encompassed within the "best interests of the child" analysis in MCL 722.23 and found that many of them (i.e., Factors (a), (b), (f), (g), (j), (k) and (l)) favored defendant largely because of actions and behaviors by plaintiff that undermined defendant as a parent and negatively impacted the children's relationship with her. The referee found that plaintiff took actions to undermine defendant's ability to provide appropriate guidance to the children by not allowing her to withhold certain privileges in response to inappropriate behavior and by showing up at school every day to pick them up thereby making them choose whether or not to go to defendant's home. The other factors were evaluated as equal.

The referee ultimately awarded defendant primary physical custody, while maintaining the parties' joint legal custody of their children. Plaintiff was awarded parenting time every other weekend. He was also found in contempt for denying defendant over 8 months of weekly parenting time to defendant and ordered to pay a fine of $1,000 within 30 days of the date the Order is served on the parties. Defendant was awarded makeup parenting time for the entire months of April, June, and August 2025, and, any softball tournament for any of the girls that

occurs during defendant's parenting time, plaintiff was ordered to "secure and pay for hotel rooms for children and [d]efendant so they can attend."

Plaintiff objected to the referee's recommendation, and the trial court held a de novo review hearing on June 6, 2025. In its order, the trial court disagreed with plaintiff that the referee erred by finding that the children had an established custodial environment with defendant. While recognizing that there "was a marked change in the nature of the children's contacts with [d]efendant after the July 2024 separation, compared with the years leading up to that point," the trial court found it appropriate that the referee "did not rely solely upon circumstances as they existed in July 2024 in making her findings" and, instead, "took into account the totality of the circumstances, in finding that an established custodial environment existed with both parties." Moreover, testimony at the de novo hearing indicated that the children were residing with defendant since April 4, 2025, without incident.

The trial court found that Factor (a) weighed in favor of both parties, rather than in defendant's favor as the referee determined, because he agreed with plaintiff that "what was found to be an unreasonable withholding of parenting time by plaintiff" was not applicable under this factor. However, this was relevant to the referee and the trial court's findings that Factors (b), (d), and (e), which the court agreed favored defendant. The trial court cited specific instances in the record evidencing plaintiff's interference with defendant's parenting time, no material consequences imposed if the children chose not to attend defendant's parenting time, no evidence of any specific safety concern, and the fact that defendant secured a 12-month lease on an appropriate residence evidencing that both parties had the equal ability for permanence for the children.

With respect to Factor (f), addressing moral fitness, the trial court found that plaintiff's actions in withholding the children and allowing them to choose whether to go to defendant's home "is tantamount to a violation of the parenting time order in the Judgment [of Divorce]," which is "illegal behavior having a direct impact on how one functions as a parent." Factors (j) and (*l*) were affirmed for similar reasons. With respect to Factor (*i*), the trial court found no basis in the record to support plaintiff's claim that the referee's interview with the children "went beyond a reasonable inquiry into the children's parental preferences." The trial court noted that the referee did not disclose the substance of her interview, and, moreover, plaintiff's claims imply that he discussed the *in camera* interview with the children, which concerned the trial court greatly. Plaintiff's claim under Factor (*i*) were without merit.

Ultimately, the trial court affirmed and adopted the Referee Recommendation. It found that defendant "has proven by clear and convincing evidence that she should be awarded primary physical custody of the children, with legal custody, and parenting time (including makeup parenting time) as ordered in the Referee Recommendation and Order." Plaintiff's fine for contempt of court was reduced to $100.

Plaintiff now appeals the Order, claiming that the trial court violated Michigan law in finding an established custodial environment existed between defendant and her children, and that the trial court committed clear legal error in modifying custody based primarily on a denial of parenting time and in using the *in camera* interview with the children to investigate substantive claims of alienation. Having reviewed the record and the parties' briefs and applying the

deferential standard to the trial court's factual findings required by Michigan law, we do not find the trial court's conclusions were against the great weight of the evidence or a palpable abuse of discretion, and we therefore affirm.

## II. STANDARDS OF REVIEW

This Court gives significant deference to the trial court's decisions in an order such as this because, quite simply, Michigan law requires it. Specifically, MCL 722.28 states:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

Three standards of review apply. As stated in *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003):

> [This Court] appl[ies] three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [Quotation marks and citations omitted.]

A distinct abuse of discretion standard applies in child-custody matters. See *Sabatine v Sabatine*, 513 Mich 276, 296; 15 NW3d 204 (2024) ("[W]e reiterate that appellate courts have a statutory obligation under MCL 722.28 to affirm trial court determinations in child-custody cases unless they are based on findings of fact against the great weight of the evidence, a palpable abuse of discretion, or a clear legal error on a major issue."). See also *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 364921); slip op at 5 ("An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias.") (quotation marks and citation omitted); *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015). None of the court's factual findings are against the great weight of the evidence, no clear legal error is present, and the trial court's decision as to the custody here was not an abuse of discretion. We affirm.

## III. ANALYSIS

### A. ESTABLISHED CUSTODIAL ENVIRONMENT

The trial court did not commit clear error in finding that an established custodial environment existed with both parents at the time of the referee hearing. While it is undisputed that the children were primarily living with plaintiff and had limited contact with defendant at the

time of the referee hearing, an "established custodial environment" is defined more broadly than plaintiff suggests. Moreover, even if the trial court had found an established custodial environment existed with plaintiff, its analysis would not change. This is because the standard to change this is clear and convincing evidence, which is the standard the trial court applied on the record before it.

An established custodial environment exists when "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). Relevant factors include the "age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship . . . ." *Id*. If an established custodial environment exists, the trial court may not amend a prior order to change this unless it finds clear and convincing evidence on the record "that it is in the best interest of the child" to do so. *Id*. A modification in parenting time does not necessarily signal a change in an established custodial environment. *Sabatine*, 513 Mich at 290-291. Rather, the trial court must consider whether the change in parenting time alters "whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort," *id*. at 291 (quotation marks and citation omitted), and this Court must give "proper deference" to the trial court's findings, especially those related to "specific facts relevant to *this* family," *id*. at 292.

The specific facts presented to the trial court support its finding that the children's established custodial environment as of the date of the hearing was with both defendant and plaintiff, and that defendant had proven by clear and convincing evidence that a change was in the best interests of the child. The children were between the ages of 16 and 11. Both parties testified to *years* in which the children naturally looked to both parties for guidance, discipline, the necessities of life, and parental comfort. This included defendant coaching the children's sports teams, working at their school, and coparenting with plaintiff both before and after their divorce in 2021. While defendant's relationship with the children was strained after she moved out of the marital home in July 2024, she continued efforts to reach out to them, participated in reunification therapy, included them in her family events in the context of her father's illness and passing, and testified as to positive interactions. Both plaintiff and the reunification therapist testified regarding the children's relationship with defendant before July 2024 and their current need for her, as their mother.

While the children were primarily living with plaintiff in the marital home at the time of the referee hearing, this is not determinative. In fact, our Supreme Court cautioned against placing "too much or too little emphasis on the child's physical environment" in determining whether an established custodial environment exists. *Sabatine*, 513 Mich at 293. "It is the trial courts that are typically in the best position to analyze the factual complexities of child-custody cases." *Id*. And, here, we find no clear error in the trial court's finding that an established custodial home existed with both parents at the time of the referee's hearing and the de novo review.

In his brief on appeal, plaintiff cites *Baker v Baker*, 411 Mich 567; 309 NW2d 532 (1981). This case, however, demonstrates the appropriateness of the trial court's decision. In *Baker*, the Supreme Court recognized that when a parties' relationship dissolves and one or both relocates, the location in which the child was born and raised is not necessarily the established custodial environment for purpose of MCL 722.27. *Id*. at 580-582. Michigan courts consider the child's relationship with both parents before and after the separation. *Id*. Here, there is no dispute that

the children had an established custodial environment with plaintiff, and the referee and trial court appropriately found an established custodial environment with defendant as well.

Moreover, the trial court applied the correct legal standard even if it had found the established custodial environment was with plaintiff. Specifically, because the trial court found an established custodial relationship with both parties, it applied the clear-and-convincing standard to *defendant's* motion for a change in custody as instructed by our Supreme Court. See *Sabatine*, 513 Mich at 290-291 ("If [a custody] modification would change the child's established custodial environment, the clear-and-convincing-evidence standard applies to the best-interest inquiry . . . .") The trial court ultimately held that defendant proved "by clear and convincing evidence that she should be awarded primary physical custody of the children, with legal custody and parenting time (including makeup parenting time) as ordered in the Referee Recommendation and Order." We find no clear error in this holding and, therefore, affirm.

## B. BEST INTERESTS

Plaintiff next contends that the trial court committed clear legal error by deciding to modify child custody "based almost exclusively" on plaintiff's "parenting time denials." We respectfully disagree. While "[d]isputes regarding visitation and contempt are not a proper basis for changing custody," *Adams v Adams*, 100 Mich App 1, 13-14; 298 NW2d 871 (1980), we find no clear error in the trial court's reference to plaintiff's behavior and actions toward defendant with respect to the parenting time as applied to the factors that the trial court ultimately found to favor defendant, i.e., Factors (b), (f), (j), (k), and (*l*).

The trial court cited plaintiff's interference with defendant's parenting time as directly implicating Factors (f) and (j). Neither finding is against the great weight of the evidence. Factor (f) addresses moral fitness. The question here is not "who is the morally superior adult" but, rather, whether the "parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct." *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994). In this case, the trial court found that plaintiff's willful denial of parenting was "tantamount to violation" of the judgment of divorce, which is "illegal behavior having a direct impact on how one functions as a parent." This finding is not against the great weight of the evidence. Even if the parties' Interim Order modified the judgment of divorce indefinitely, there is no dispute that plaintiff knew what the Interim Order required with respect to defendant's parenting time, and that at least one child did not attend the Saturday meetings scheduled therein. The trial court's finding that this factor weighed in defendant's favor is not against the great weight of the evidence or demonstrate clear error under Michigan law.

Factor (j) addresses the parties' respective "willingness and ability . . . to facilitate and encourage a close and continuing parent-child relationship" with the other parent. Here, the trial court cited plaintiff's actions in showing up at school to pick up the children knowing that it was defendant's parenting time and his failure to provide meaningful consequences when one or more of the children chose not to go to defendant's home. The trial court found these actions showed a lack of willingness or ability to facilitate a close relationship between defendant and the children after July 2024. In other words, it was not plaintiff's violation of a court order that the trial court relied on to find in defendant's favor, but plaintiff's actions and the effect this had on defendant's relationship with the children.

This was true with respect to other factors, as well. On Factor (b) ("[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any"), the trial court affirmed the referee's finding that plaintiff "lacks the disposition to give appropriate guidance regarding the children's ongoing contact" with defendant. In this context, the trial court and the referee again cited actions by plaintiff—including not allowing defendant to enforce certain consequences for defiant behavior and in daily being at school to pick up the children on defendant's parenting weeks—as evidence that plaintiff lacked capacity and the disposition to appropriately guide and raise the children. The judgment of divorce was referred to only in the context that plaintiff knew of expectations set forth therein, but the court did not rely on plaintiff's violation of it. Rather, it was his actions in interfering with the children's relationship with their mother for purposes of this factor.

Concerning Factor (k) ("[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child"), the trial court discussed the allegations of domestic violence leveled by defendant against plaintiff, as well as plaintiff's denials, and concluded that defendant was more credible.

And, with respect to Factor (*l*) ("[a]ny other factor considered by the court to be relevant to a particular child custody dispute"), the trial court concluded that plaintiff should be held in contempt of court because there was no reason for him to not have taken the children for parenting time with defendant, and his other arguments against a finding of contempt were without merit.

The bottom line is that the trial court's analysis of Factors (b), (f), (j), (k), and (*l*), was not limited to plaintiff's violation of the court orders or his denial of parenting time, but properly considered specific behaviors and actions by plaintiff that implicated each of the factors discussed earlier. The trial court's factual finding that plaintiff undermined defendant as a parent and in the context of her relationship with the children is not against the clear weight of the evidence but, instead, is supported by testimony on the record. And, its overall determination as to custody does not demonstrate an abuse of discretion. See *Vodvarka*, 259 Mich App at 507-508.

## C. *IN CAMERA* INTERVIEW

Plaintiff next argues that the referee improperly used the *in camera* interview of the children to investigate the claims of parental alienation instead of merely to discover the children's preferences.

MCL 722.23(*i*) addresses "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." No party has presented any evidence suggesting that the referee's inquiry went beyond that allowed under Michigan law for children of this age. The referee simply stated that she had taken the children's preferences into account. After plaintiff filed an objection stating that it appeared that the interview had been used to determine if there were any legitimate safety concerns in defendant's home, the trial court noted that any such information regarding the interview was not in the record. It also stated that even if the referee had discussed the issue of a legitimate safety concern, this would be pertinent to the issue of a child's reasonable preference.

On appeal, plaintiff again argues that the referee, in interviewing the children, went beyond inquiring about the children's preferences, which is prohibited. See *Molloy v Molloy*, 247 Mich App 348, 351; 637 NW2d 803 (2001), vacated in part on other grounds 466 Mich 852 (2002). But *Molloy* indicates that an inquiry into *the rationale* for a preference is appropriate. *Id*. at 359. More importantly, plaintiff, to prove his allegation, relies on the referee's statement under Factor (e) that the children found defendant's boyfriend's family "weird." He contends that this information must have been elicited at the *in camera* interview. But the referee, in making this statement, explicitly referred to evidence at "the [custody] hearing." And this testimony about alleged "weirdness" was indeed elicited at the custody hearing. Plaintiff contends that the trial court "did nothing to correct the error committed by the Referee in using the children's *in camera* interview as a fact-finding tool and then relying on their statements in its broader child custody determination." But plaintiff, quite simply, has established no such error on the part of the referee. As such, no appellate relief is warranted.

Affirmed.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense