COURT OF APPEALS OF VIRGINIA

Present: Judges Koontz,[*] Elder and Senior Judge Duff

GREGORY A. HAASE

v.   Record No. 1175-94-1                    OPINION BY
                                    JUDGE LAWRENCE L. KOONTZ, JR.
KAREN U. HAASE                           AUGUST 22, 1995

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Lawrence D. Diehl for appellant.

Moody E. Stallings, Jr. (Kevin E. Martin-Gayle;
Stallings & Richardson, P.C., on brief), for
appellee.


Gregory A. Haase (father) appeals various decisions of the
Circuit Court of the City of Virginia Beach in a decree of
divorce a vinculo matrimonii from his former wife, Karen U. Haase
(mother), based upon a report and recommendation of James A.
Evans, Commissioner in Chancery (commissioner), awarding custody
of the couple's two minor children, Benjamin, age twelve, and
Emily, age eight[1], to mother.  Father contends that the
chancellor erred (1) in approving the commissioner's decision
over the objection of a parent to receive testimony from the
couple's children where expert testimony suggested that requiring
the children to testify would be detrimental to their welfare;
(2) in approving the commissioner's decision to receive the
children's testimony in an informal proceeding in camera without

---

[*]Justice Koontz prepared and the Court adopted the opinion
in this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

[1]The children were eleven and six at the time of the
commissioner's hearing relevant to this appeal.

counsel or the parties present; and (3) in adopting the commissioner's findings of fact and awarding sole custody to the mother. For the following reasons, we affirm the chancellor's decisions.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The couple married in 1980 and separated in 1991. After seventeen months separation, mother filed for divorce on the ground of separation for more than one year without hope of reconciliation. Mother sought sole custody of the children. Father denied a mutual separation had occurred, asserting that he retained a hope of reconciliation. He charged in a cross-bill that mother was guilty of desertion and adultery, alleged that the couple shared joint custody of the children at that time pursuant to a juvenile and domestic relations district court (juvenile court) order confirming a custody agreement, and sought sole custody of the children. Mother denied the allegations of desertion and adultery but admitted the existing custody arrangement.[2]

The Honorable Robert B. Cromwell, Jr., then chancellor of record, referred the matter to the commissioner. During the commissioner's first hearing, mother indicated that she desired to have Benjamin give evidence to the commissioner in camera with

_____

[2]The joint custody agreement was arrived at through a family mediation program. It provided for a weekly time share schedule and holiday visits.

counsel, but not the parties, present. As counsel for father was not aware of this request prior to it being made, the commissioner deferred action on the request at that time.

At a subsequent hearing, father objected to having Benjamin testify, asserting that it would be psychologically harmful to Benjamin. A licensed professional counselor testified that Benjamin was torn between his parents and had been alienated against his father by his mother.

After additional argument, the commissioner ruled that he would receive evidence from the children in camera with neither the parties nor counsel present. Father objected that this was not proper procedure absent consent of the parties and because of evidence that the children had been coached. The commissioner suggested that the parties could seek a directive from the court "if [the parties] want me to do it any other way." Prior to the children testifying at a third hearing, father renewed his objection before the commissioner but did not seek a directive from the court. The children then testified in camera without counsel or the parties present. The testimony took the form of a conversation directed by questions from the commissioner on various subjects, including school, summer activities, friends and the children's relationship with each parent.

Father and his lay and expert witnesses maintained that mother was disinterested in the children's welfare, that she had interfered with the joint custody arrangement and father's

-3-

attempts to promote family counseling, and that she had attempted to alienate Benjamin against his father.  Father further maintained that he had curtailed his medical practice in order to spend more time with the children to compensate for mother's lack of interest, resulting in a significant decrease in income. Father outlined a plan for providing child care and maintaining the former marital home so that the children would continue in the same schools.

Mother and her witnesses testified that father burdened the children with too many activities and used them as pawns in his reconciliation attempts.  An expert witness for father conceded that Benjamin did not like the intense schedule of activities prepared by his father.  He further testified that Benjamin was "afraid of his father" and "feels he is on a whirlwind trip." Mother's evidence countered the father's claim that she was disinterested in the children's upbringing and education.  Mother asserted, in a letter admitted into evidence, that she refused to participate in counseling because the counsellor had a prior professional relationship with father.

At the conclusion of all of the testimony, the commissioner found that the existing joint custody arrangement was not in the children's best interest and recommended that mother be given sole custody with holiday and extended summer visitation for father.  Pursuant to Rule 2:18(c), the commissioner filed his report and a transcript of the proceedings and testimony,

including the testimony of the children in the <u>in camera</u> interview, with the clerk of the circuit court. Father excepted to the commissioner's recommendation regarding custody and filed a motion with the chancellor requesting that the issue be referred to the juvenile court. The chancellor adopted the commissioner's findings and recommendations, granting the divorce on the grounds of the mother's adultery and desertion, while awarding sole custody of the children to mother. This appeal followed.

II.

AUTHORITY OF THE COMMISSIONER IN CHANCERY

"A commissioner in chancery is an officer appointed by the chancellor to aid him [or her] in the proper and expeditious performance of his [or her] official duties." <u>Raiford v. Raiford</u>, 193 Va. 221, 226, 68 S.E.2d 888, 891 (1952). When a court refers a cause to a commissioner in chancery, it does not delegate its judicial functions to the commissioner. <u>Lawrence v. Lawrence</u>, 212 Va. 44, 47, 181 S.E.2d 640, 643 (1971). Thus, the commissioner, while functioning as an independent judicial officer, is a surrogate for the chancellor and is subject to the chancellor's control. Conversely, the actions of the commissioner are not binding on the chancellor, who must exercise independent judicial judgment over the evidence presented in the commissioner's report. Once adopted by the chancellor, however, the actions, findings and recommendations of the commissioner become those of the supervising court and are due considerable

deference on appeal.  See Brawand v. Brawand, 1 Va. App. 305, 308, 338 S.E.2d 651, 652 (1986).

In undertaking the receipt of evidence, the commissioner must be cognizant of the rules of evidence and procedure applicable to proceedings in chancery.  However, the commissioner's hearing is not a trial, and the standards applicable to such proceedings are necessarily relaxed in order to accommodate the judicial economy contemplated by the statutory authorization of the office of commissioner.  See Code § 8.01-607.  Accordingly, the manner in which the commissioner requires the parties to produce evidence, calls and examines witnesses, and rules on the admissibility of evidence is entrusted to the commissioner's discretion "unless otherwise directed by the decree of reference" or an amendment thereto sought and obtained by a party.  Rule 2:18.

### III.

### CALLING THE CHILDREN AS WITNESSES

Recognition of the potential conflict between the interests of parents and their children in custody cases has been firmly established in Virginia law.  See Williams v. Woolfolk, 188 Va. 312, 317, 49 S.E.2d 270, 272 (1948).  Although the wishes of the child are not controlling, the commissioner may properly consider that preference and give weight to it in making a custody recommendation to the chancellor.  See Hall v. Hall, 210 Va. 668, 672, 173 S.E.2d 865, 868 (1970); Hepler v. Hepler, 195 Va. 611, 620, 79 S.E.2d 652, 658 (1954).  Prior to receiving evidence from

the child, the commissioner must determine that the child is "of reasonable intelligence, understanding, age and experience to express such a preference." Code § 20-124.3(7); see also Durant v. Commonwealth, 7 Va. App. 454, 462, 375 S.E.2d 396, 400 (1988)(trial court's judgment as to competence of child witness will not be disturbed on appeal absent manifest error).

Here, the commissioner elected to receive evidence from the children in order to determine their preference as to custody as is contemplated by Code § 20-124.3. Despite father's assertion that the experience of being compelled to testify would be detrimental to the children, we cannot say that the commissioner abused his discretion in electing to examine the children. The evidence presented by father was equivocal and speculative as to the potential harm. The commissioner was privileged to consider father's self-interest in seeking to obstruct the receipt of evidence from the children and in weighing the credibility of the evidence presented by father seeking to accomplish that end. Moreover, the record adequately supports a conclusion that these children, although young, were of sufficient intelligence, understanding and experience to express their views concerning their custody.

IV.

THE IN CAMERA INTERVIEW

No person who is a party to a divorce proceeding--litigant, counsel, or chancellor--relishes the spectacle of a child testifying in open court as to his or her preference for one

-7-

parent over another.  See Buck v. Buck, 31 N.W.2d 829, 831 (Mich. 1948); Price v. Price, 192 S.W. 893, 894 (Ark. 1917). Accordingly, the preferred method of receiving such evidence in the majority of jurisdictions is to obtain the child's views in an in camera interview.  See Stickler v. Stickler, 206 N.E.2d 720, 723 (Ill. Ct. App. 1965).  See generally Jones, Judicial Questioning of Children in Custody and Visitation Proceedings, 18 Fam. L.Q. 43 (1984).  Other than tangential references to such practice, this is a matter of first impression for appellate review in this Commonwealth, especially where, as here, the in camera interview is conducted outside the presence of the parents and their counsel and over the objection of one of the parents. See, e.g., Addison v. Addison, 210 Va. 104, 109, 168 S.E.2d 281, 284 (1969)(noting that children were interviewed in camera by agreement of the parties).

Father's principal challenge to the procedure used here is that it violated his due process right of confrontation.  In addition to a denial of an opportunity to confront the witness, he asserts that, as a matter of policy, the exclusion of counsel from the in camera interview will increase the involvement of children as witnesses in emotional custody disputes.  Such is the case, he asserts, because a parent is more likely to keep a child out of court if the child is to be subjected to cross-examination, but would be encouraged to involve the child as a witness if the parent knows that the interview will be conducted

only in the presence of the judicial officer.

    We recognize that questions of child custody, whether in a divorce proceeding or a civil action by the Commonwealth, involve a fundamental liberty interest of the parent.  Accordingly, the parent must be accorded the benefits of due process.  <u>Rader v. Montgomery Co. Dep't of Social Servs.</u>, 5 Va. App. 523, 528, 365 S.E.2d 234, 237 (1988).  Nonetheless, "[i]n any child custody decision, the lodestar for the court is the best interest of the child," <u>Smith v. Pond</u>, 5 Va. App. 161, 163, 360 S.E.2d 885, 886 (1987), and the due process rights of the parents must be tempered by this guiding principle.

    We are not persuaded that reaching the goal of providing an appropriate balance between protecting the interest of children and the procedural rights of their parents in resolving custody disputes is facilitated by a set of bright-line rules applicable regardless of the circumstances of individual cases.  Rather, in determining how to proceed with the receipt of evidence from children in custody cases, the judicial officer, whether the chancellor or a commissioner[3], should consider the facts and

_____

[3]We do not here express an opinion on the procedures applicable to cases heard before juvenile courts.  The concerns present with commissioner's hearings are not present in the juvenile courts, which are not courts of record, because their decisions, unlike those of a commissioner, are subject to <u>de novo</u> consideration on appeal to the circuit court.  <u>Compare</u> <u>Barnes v. City of Newport News</u>, 9 Va. App. 466, 469, 389 S.E.2d 481, 483 (1990)(appeal <u>de novo</u> from district court assures complete record for Court of Appeals) <u>and</u> <u>Peple v. Peple</u>, 5 Va. App. 414, 419, 364 S.E.2d 232, 236 (1988)(appeal to the circuit court from the juvenile court annuls the judgment of the inferior tribunal) <u>with</u> <u>Robinson v. Robinson</u>, 5 Va. App. 222, 225-26, 361 S.E.2d 356, 358

circumstances of the particular case. Among the factors to be considered are the age and maturity of the children, the matters to be brought forth in their testimony, the acrimony between the parents, and the likelihood of improper influence by one or both of the parents on the children's testimony. Based upon the consideration of these factors and others as may be appropriate, the judicial officer should then determine the method of receiving evidence which serves the best interest of the children while preserving to the greatest extent possible the procedural rights of the parents.

Although we decline to establish a bright-line requirement that counsel be present and permitted to participate in all <u>in camera</u> proceedings in child custody cases, we believe that in most cases such will best ensure the protection of the child's interests and the parents' rights. However, depending on the circumstances of the individual case, the appropriate procedure may be an <u>in camera</u> interview conducted by the judicial officer alone.

If the judicial officer elects to exclude the parents and counsel from the interview, the procedural rights of the parents cannot be sustained unless a record of the evidence received is

(..continued)
(1987)(the Court of Appeals will consider the ability of the commissioner, not shared by the chancellor, to see, hear and evaluate the witnesses at first hand) <u>and</u> <u>Dodge v. Dodge</u>, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)(although not carrying the weight of a jury verdict, a commissioner's report should be sustained unless its findings are not supported by the evidence).

prepared.  See Nowak v. Nowak, 546 So.2d 123, 124 (Fla. 1989)(reversing for failure to provide record of in camera proceeding).  Accordingly, when an in camera interview is conducted by the judicial officer alone over the objection of a parent, a transcript of the evidence received must be prepared and made available upon request of the parents.

Under the facts of the present case, we hold that the commissioner struck an appropriate balance between the interests of the children and the procedural rights of the parents.  The commissioner was faced with father's incongruous position that the children should not be permitted to testify, but if they were to testify, then it should be in the manner most potentially harmful to them.  In pursuing the more restrictive course, the commissioner was able to preserve the welfare of the children from the potential harm of a formal examination process while obtaining an adequate sense of their needs and preferences as to custody.

When the commissioner announced his decision to proceed with an in camera interview, excluding the parties and counsel, he invited the parties to seek an amendment to the decree of reference directing him to do otherwise.  The parties chose not to seek such a directive.  Thereafter, by virtue of the record prepared by the court reporter, father had adequate opportunity to challenge the evidence taken from the children, either before the commissioner or when the matter was considered by the

chancellor.  Accordingly, the procedural rights of father were not prejudiced by the commissioner's election to exclude father and his counsel from the interview with the children.

V.

AWARD OF CUSTODY

Father further contends that the chancellor erred in adopting the commissioner's recommendation granting sole custody to mother.  Father first contends that the previous approval of the joint custody agreement by the juvenile court was owed deference and that joint custody was appropriate under the facts of the case.  We disagree.  The pre-decree custody arrangement was not binding on the court.  See Wilkerson v. Wilkerson, 214 Va. 395, 397, 200 S.E.2d 581, 583 (1973).  Moreover, although the order of the juvenile court remained in force during the pendency of the divorce proceeding, it was merely one of the factors to be considered by the circuit court and was neither binding on the chancellor nor paramount among the factors to her determination.  See Peple v. Peple, 5 Va. App. 414, 421, 364 S.E.2d 232, 237 (1988)(lower court's order remains in force until modified by circuit court, which has sole jurisdiction in the matter).

Father next contends that if the evidence favored an award of sole custody, he was the appropriate party to receive custody of the children.  We disagree.

> For purposes of appellate review, a trial court's determination is considered to have settled all conflicts in the evidence in favor of the prevailing party, and the prevailing party's evidence is entitled to all reasonable inferences fairly deducible therefrom. . . .  In examining the evidence and

> determining matters regarding a child's welfare, the trial court must consider all evidence before it. . . . Where a trial court makes a determination which is adequately supported by the record, the determination must be affirmed.

Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).

The principal factor against awarding custody to the mother was the determination that she had committed adultery. However, "the mere fact of adultery, 'without more, is an insufficient basis upon which to find that a parent is an unfit custodian of his or her child.'" Ford v. Ford, 14 Va. App. 551, 554, 419 S.E.2d 415, 417 (1992)(quoting Brinkley v. Brinkley, 1 Va. App. 222, 224, 336 S.E.2d 901, 902 (1985)). Rather, the adultery is simply one of the factors which the chancellor should consider. The record before us, including the testimony of the children, adequately supports the chancellor's determination that the children's best interest was served by an award of sole custody to mother with liberal visitation to father.

For these reasons, the decisions of the chancellor are affirmed.

Affirmed.