COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Fulton and Lorish
Argued at Fredericksburg, Virginia


MICHAEL POWELL

MEMORANDUM OPINION[*] BY
v.       Record No. 0853-22-4          JUDGE JUNIUS P. FULTON, III
MAY 16, 2023

MELANIE KNOEPFLER-POWELL


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge

James B. Kinsel (Rebecca Bricken Kinsel; Siobhan Therese Canty;
Protorae Law, PLLC, on briefs), for appellant.

Sharon Voyles Filipour (Kinsey, Lynch & Filipour, on brief), for
appellee.


Michael Powell (father) appeals the Fairfax County Circuit Court's "Custody and Child

Support Order," entered on May 9, 2022.[1]  Father argues that the trial court erred by not modifying

his custodial time with the parties' minor child and awarding Melanie Knoepfler-Powell (mother)

with final decision-making authority regarding the child's medical care.  Father further challenges

the trial court's decision to allow the child to testify and contends that the trial court erred by

reviewing the child's written notes that she brought with her when she testified.  Father argues that

the trial court "improperly considered" opposing counsel's statements and erred in its interpretation

of the child's testimony.  He also contends that the trial court erred by not providing a "mechanism

for future evaluation or determination of whether [the child] would be ready in the future for

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Neither party challenges the trial court's child support ruling, so we will not address the
support matters.

additional time" with father. Finally, father argues that the final order contains inaccurate information and remand is appropriate to correct the final order. We find no substantive error and affirm the trial court's judgment. We will, however, remand to the trial court to address any clerical errors that may be contained in the final order.

## BACKGROUND

"On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" *Bedell v. Price*, 70 Va. App. 497, 500-01 (2019) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 40 (2014)). Here, mother is the prevailing party.

Father and mother are the biological parents to a child who was nine years old at the time of the trial court hearing.[2] On July 21, 2017, the trial court entered a final decree of divorce, which incorporated the parties' property settlement agreement (the "PSA"). The PSA included provisions regarding custody, visitation, and child support. The parties agreed to joint legal custody of the child, and mother had primary physical custody. Father's parenting time included the second and fourth weekend of every month, and the child alternated between mother and father on any fifth weekend of a month. Father also had time with the child for four weeks in the summer, and the parties shared or alternated holidays and other special occasions.

On March 26, 2021, mother notified the trial court of a change in her address and her intention to relocate with the child to Alabama, effective April 30, 2021.[3] Father objected to mother relocating with the child and requested an injunction. Mother subsequently moved to modify

---

[2] The trial took place between January 25 and February 9, 2022.

[3] Mother ultimately withdrew her request to move to Alabama.

custody and visitation and requested that the trial court allow the child to relocate with her to Alabama, where her family lived and she had a job offer.[4]

In response, father also moved to modify custody and visitation. Father, who was an employee of the U.S. Department of State, had been required to work in Iraq from the summer of 2020 through the summer of 2021, but as of July 12, 2021, had a "desk job" and was in northern Virginia "permanently." He requested primary physical custody of the child if mother moved to Alabama, or "more time" with the child if mother stayed in Virginia. Father also requested "tie-breaking authority" for medical decisions regarding the child.

The trial court entered a "Domestic Relations Case Scheduling Order," setting a two-day trial for January 25 and 26, 2022,[5] and establishing pretrial deadlines. Both parties filed exhibit and witness lists, as required under the scheduling order. Mother named the child as a potential witness, to which father objected. He filed a motion *in limine* to preclude the child's testimony and moved to quash the nine-year-old child's subpoena. Father argued that the child's "[i]nvolvement" in the hearing was not in her best interests. The trial court took father's motion under advisement.

At the trial, father presented evidence regarding the material change of circumstances since the last court order. When father and mother previously agreed on the custody and visitation arrangements, father's work schedule was "very unpredictable" and included travel. He knew that he would have to "do a[n] overseas tour somewhere" within a couple of years of that agreement because of the State Department's policy.

---

[4] Mother had lost her job during the COVID-19 pandemic, and she was helping care for her mother who lived in Alabama and had been diagnosed with cancer.

[5] The trial carried over to a third day, which took place several weeks later on February 9, 2022.

While in Iraq, from July 2020 through July 2021, father tried to contact the child "every single day" by phone, Facebook Messenger, or Skype. Three times during his tour, father was able to return to Virginia and requested to visit with the child "as much as possible."

When father returned home permanently in July 2021, his job assignment changed, and he no longer had "unpredictable work travel." He did not expect another overseas work assignment for "at least eight years." Therefore, he sought to spend "more time" with the child and became "more engaged" with the child. Father explained that he wanted to help the child with her schoolwork, "develop her confidence," and encourage her to "try new things."

At the time, father was living with his girlfriend and her daughter in the former marital residence, where the child grew up.[6] Father claimed the child and his girlfriend's daughter "get along great" but admitted that they had some "squabbles" like siblings do. Father described the child's relationship with his girlfriend as "wonderful" and "growing."

At the end of the first day of trial, the trial court raised the issue of the child testifying and father reiterated his objection. Father emphasized that the trial court would hear from numerous witnesses who could testify about the child and her relationship with the parties, so it was "not necessary" for the child to "be exposed" to court. Father was concerned about the child's well-being and the unknown "potential harm" to her for having to testify. He argued that the child's well-being "outweighs the benefit . . . of being able to hear whatever [the child] might have to say." Mother's counsel informed the trial court that she had spoken with the child about the court proceeding and the child wanted "to be heard." Father expressed concern that counsel could have "skewed" the situation when talking with the child. Considering the child knew of the proceedings and there was no evidence that testifying would be "psychologically detrimental," the trial court

---

[6] After the evidentiary hearing, but before the entry of the final order, father married his girlfriend. Nonetheless, to be consistent with the trial court, we refer to her as father's girlfriend.

- 4 -

found "no reason to restrict the child from appearing." The trial court then reviewed the procedures for the child testifying, including "the qualification part" and "the substantive part" of her testimony.

The next morning, the school counselor testified that the child had visited her the previous day because she was "anxious" and "nervous" about having to testify and "having to state her wishes in front of both parents." After the school counselor testified, father renewed his motion *in limine* concerning the child testifying. Father argued that it was not in her best interests to testify, especially considering her age and "level of anxiety." The trial court acknowledged that the child told a "neutral person" that she was nervous about coming to court but found that her feelings were "understandable." Mother argued that the trial court needed to consider the "preference of the child" and claimed that father had not agreed to other suggested methods for conveying the child's preference, such as a therapist's testimony or stipulating to the child's statements after counsel spoke with her. After hearing the parties' arguments, the trial court found that testifying would not be "any more harmful [to the child] than already being in this . . . situation."

Following the trial court's ruling, the child entered the courtroom and met the judge; she stated that she had "brought a few notes" with her. The trial court told the child that she could refer to them if she wanted. The trial court then questioned the child regarding her competency to testify, and ultimately, neither party objected to the child's qualifications for testifying.

The trial court questioned the child about her parents. The child explained that when father returned from Iraq and had more time to spend with her, she thought it was "good to see him a little bit," but she was "used to hanging out with mom and stuff" and did not "want to go back." When the trial court tried to clarify what she meant, the child did not have an immediate response. The trial court then asked her if she wanted to look at her notes. The child informed the trial court that they were "not really notes" because she "wrote a whole book about it." The child shared her notes

with the trial court and told the judge that she wrote it "yesterday and today." The trial court told counsel that it had not decided whether it would consider her notes, but it wanted to "review [them]." After taking a "quick look" at the child's notes, the trial court asked the child about her dog, with whom she said she was "[v]ery, very close."

The trial court then asked the child about her relationship with father. The child could not express to the trial court what father "could do better" to make things more "comfortable" for her. The trial court asked the child whether she had told father about "[s]ome of the things that [she] had in the notes," and the child indicated that she had not because she was "worried" that he would not like them. The trial court suggested that she should tell him how she feels, but she was reluctant to do so. Further, the child testified that sometimes mother helped her express her feelings to father.

The trial court then emphasized that it, not her parents, would be deciding what happened. Nevertheless, it wanted to know what she wanted for her "living situation." The child said that she wanted to live with mother and visit father when she wanted. She also indicated that she did not want her parents to call her "every day" when she was at the other parent's house because sometimes, she was busy and did not want to talk. After counsel had a chance to ask questions of the child, the trial court asked the child about her stuffed animal, which was at mother's house. The trial court returned the child's notes to her.

After the child left the courtroom, the trial court informed the parties that before it had returned the child's notes to her, it had surreptitiously made a copy. The trial court indicated that it intended to share the child's notes with the parties and wanted to admit the notes as a sealed

demonstrative exhibit because the child adopted some of the contents as her testimony.[7] The trial court informed the parties that it would hear any objections to it being admitted as demonstrative and whether it could consider the contents at the next hearing. The trial court noted that as a demonstrative exhibit, it had "no evidentiary value in and of itself." Father objected to its admission, but mother did not. Father did not offer a basis for his objection, notwithstanding the fact that the trial court invited both parties to "protect" the record.

The trial court also commented that "this has been an interesting dynamic" and that "some innocent things that dad says are being perceived a certain way" because the child is "very sensitive." The trial court found it "helpful to see what the child's view is" and that she seemed "comfortable in the proceedings." Further, the trial court specified that the notes would be helpful in guiding its examination of witnesses.

After a break in the trial of several weeks, the parties reconvened on February 9, 2022, for the third day of trial. Mother testified that she was "concerned" about the child's mental health and her ability to communicate her feelings and deal with conflict. Mother emphasized that she and father had agreed in their property settlement agreement that they would engage in co-parenting counseling and the child would be assessed for therapy. When mother reached out to father about counseling, he "ignored" her. Mother felt that father used "his legal custody as a bargaining chip" and prevented her from choosing a therapist for the child. Mother did not think that she and father had been "effective joint decision-makers" and did not envision matters changing until the child had therapy.

---

[7] The trial court sealed the child's notes in the record. Nevertheless, the appeal necessitates unsealing portions of the child's notes to resolve some of the issues father has raised. Evidence and factual findings below that are necessary to address those assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

Upon the trial court's inquiry, mother confirmed that she was not aware of the child's notes before the hearing and the child had not shared them with her. Father acknowledged that he reviewed the child's notes following her testimony. Father testified that her notes were "upsetting" and did "not reflect" the child that he sees because she had not "shown any hesitation of speaking with [him] or opening up to [him]." Referring to an incident mentioned in the notes, father denied that he refused to care for the child's dog. The trial court asked father about another incident in the child's notes regarding her stuffed animal. Father had commented to the child that she was nine years old and still had a stuffed animal. The child said that she just liked having it. Father denied saying that she could not have the stuffed animal. Father emphasized that his relationship with the child is "absolutely not what is in those notes." After the child testified in January, she visited father, who did not ask her "if anything specifically was bothering her" and did not discuss the case or her notes with her. The child did not seem "upset" or "nervous." Father, however, continued to call the child every day even though she had testified that she did not want daily telephone calls.

Father agreed that the child would benefit from counseling. Father claimed that the child had not attended therapy yet because of scheduling concerns and indecision on a counselor that was covered by insurance. Father further recognized that it would not be in the child's best interests for her to be with him "full-time," but he wanted to share equally the time that she spent with him and mother.

At the conclusion of all the evidence, the parties presented their closing arguments and agreed that father's employment situation was a material change in circumstances since the last court order. Father requested "more time," and ideally equal time, with the child. Mother asked for no changes to father's visitation. Both father and mother agreed to counseling, but mother argued that she was "far better at assessing and meeting the child's emotional needs" and should be the one to "make the decisions" for the child.

After hearing all the evidence and argument, the trial court considered the Code § 20-124.3 factors to assess the best interests of the child. The trial court found that father's employment and household changes had affected the child's mental condition and "stability factors." The trial court further found that based on their history, mother had "a greater ability to accurately assess and meet the emotional, intellectual, and physical needs of the child"; however, father had "a lot to offer." The trial court acknowledged that father was "not doing anything objectively that [was] particularly wrong."

The trial court then considered the child's preference and "gleaned" from her testimony that father was "going a little fast." The trial court characterized the child's "pillars of security" as four relationships or things of importance to the child: her mother, her dog, her stuffed animal, and her friends. The trial court found that the child viewed father as "kind of a threat" to her "pillars," especially her mother, because she would not have as much time with mother if she visited father more often. The trial court also considered the child's reactions to "innocent" comments that father made about the child's stuffed animal and dog. The trial court found that the child was "very sensitive" and had interpreted father's comments as him "trying to take" away her "pillars of security."

The trial court disagreed with father that if the child spent more time with him that their relationship would improve. The trial court noted that after the child testified that she did not want daily phone calls, father "could have dialed back the phone calls," but he "didn't alter one iota the course of action, even in that very most minimal way." The trial court considered the child's request to visit father when she wanted and found that the child was not saying that she did not want to visit father, but she believed that the visitation changes were "too quick, too fast." The trial court concluded that "for better or for worse," the child's "pillars of security

[were] being threatened." The trial court could not "disregard" the child's feelings and agreed with the parties that therapy could help the child and her relationship with father.

The trial court held that modifying visitation would be "damaging" to the child. The trial court further ordered the child to attend therapy with a counselor covered by insurance and of "mother's choosing" to improve the relationship between the child and "both parents, but especially with . . . father." The trial court also held that mother would have "final decision-making authority [for the child] with respect to issues of medical care which include mental health."

Following the trial court's ruling from the bench, father filed a motion to reconsider. The parties appeared before the trial court for a hearing on father's motion. After hearing arguments, the trial court took the matter under advisement and subsequently issued a letter opinion and final order. The trial court denied father's motion to modify custody and visitation and awarded mother with "final decision-making authority regarding all decisions about the child's care which are medical in nature, including but not limited to decisions regarding the selection of a therapist for the minor child." Father appeals.

ANALYSIS

Father challenges the trial court's custody and visitation rulings. "We review the trial court's decisions on custody and visitation for an abuse of discretion." *Rainey v. Rainey*, 74 Va. App. 359, 376 (2022). "The trial court's rulings come to us with a presumption of correctness." *Id.* at 377. "The trial court is presumed to know and correctly apply the law 'absent clear evidence to the contrary in the record.'" *Id.* (quoting *Milam v. Milam*, 65 Va. App. 439, 466 (2015)). "The trial court's decision on factual issues is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." *Id.* "Our use of this deferential standard of review 'rests on the venerable belief that the judge closest to the contest is

the judge best able to discern where the equities lie.'" *Id.* (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 193 (2019)). "If the trial court's findings are supported by evidence, the appellate court must uphold them even if it would have reached an entirely different conclusion." *Id.*

## I. Custody and visitation

Father argues that the trial court erred by not modifying the custody and visitation order and granting him more time with the child. "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." *Wynnycky*, 71 Va. App. at 193 (quoting *Bedell*, 70 Va. App. at 504). "The trial court has broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Id.* (cleaned up) (quoting *Eaton v. Dep't of Soc. Servs.*, 66 Va. App. 317, 324 (2016)).

"In determining whether a change in custody is warranted, the trial court applies a two-part test: (1) whether a change of circumstances has occurred since the most recent custody award; and (2) whether such a change would be in the best interests of the child." *Khalid-Schieber v. Hussain*, 70 Va. App. 219, 228 (2019) (quoting *Parish v. Spaulding*, 26 Va. App. 566, 570-71 (1998)). The parties agreed that there had been a change of circumstances since the last visitation order due to changes in father's employment and household. Therefore, the only issue before the trial court was whether a modification of father's custody and visitation was in the child's best interests.

## A. Best interests

Code § 20-124.3 includes a list of factors that a trial court "shall consider" when determining the "best interests of a child" for custody and visitation. *Armstrong v. Armstrong*, 71 Va. App. 97, 104 (2019) (quoting Code § 20-124.3). A trial court, however, is not "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." *Id.* (quoting *Sargent v. Sargent*, 20 Va. App. 694, 702 (1995)).

- 11 -

Father asks this Court to reconsider the evidence presented regarding the Code § 20-124.3 factors. He contends that the trial court erred in its interpretation of the child's testimony and gave it "improper weight." The trial court heard three days of evidence, including testimony from mother and father, the child, and family friends and neighbors, including the child's paternal grandmother and aunt, father's girlfriend, and the child's school counselor. It then considered each of the statutory factors in detail. The trial court focused on the child's mental condition and her need for therapy, each parent's "ability to accurately assess the emotional, intellectual, and physical needs of the child," their lack of cooperation in seeking therapy for the child, and the reasonable preference of the child. The trial court noted that the child's preference was "only one factor" and "not dispositive." The trial court found that the child believed that father's request for changes in visitation was "too quick, too fast" after his return from Iraq. Thus, after considering all the evidence, the trial court found that it was in the child's best interests to "maintain" the existing custody and visitation arrangements.

At the hearing on father's motion to reconsider, the trial court further explained that mother and father were "two compelling parents" and it did not find that father was "lacking qualities or being a bad parent." The trial court, however, focused on the best interests of the child.

There is credible evidence in the record that supports the trial court's finding that it was not in the child's best interests to modify custody or visitation. "Because the record contains evidence in support of the court's findings, we are precluded from retrying the facts or reweighing the factors." *Armstrong*, 71 Va. App. at 105. "Where the record contains credible evidence in support of the findings made by [the] court, we may not retry the facts or substitute our view of the facts for [that] of the trial court." *Id.* (alteration in original) (quoting *Bedell*, 70 Va. App. at 504);

*see also Rainey*, 74 Va. App. at 391 ("It is not the function of this Court to substitute its views for that of the trial court, even if we might have viewed the evidence differently.").

### B. Basis of trial court's ruling

Father claims that the trial court "improperly relied" upon its personal beliefs in determining the child's best interests. He refers to the trial court judge's "general observation" from his time on the bench and in private practice that children "in a 50-50 [custody] situation . . . never have a real secure home, despite both parents being a great place." Father claims that the trial court used this "general observation" to "impermissibly" form a basis for its decision to deny father shared physical custody. "It is, of course, true that a factfinder must base its decision on evidence presented . . . . However, it is equally true that factfinders, whether jurors or trial judges, do not abandon their common sense or experience in performing their function." *Wynnycky*, 71 Va. App. at 203.

Father also argues that the trial court determined the child's "pillars of security" based on its own beliefs and not on the child's testimony. As the factfinder, the trial court "may draw inferences from the evidence so long as those inferences do not 'defy logic and common sense.'" *Id.* (quoting *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 283 (2011)). After hearing all the evidence, the trial court inferred that the child had relied on mother for stability and determined that it was in the child's best interests to maintain the status quo with father's visitation. As noted above, there is credible evidence in the record to support the trial court's custody and visitation rulings. The court therefore did not improperly rely on its personal beliefs or facts not in evidence in coming to its custody decision.

## C. Future modification

Father asserts that the trial court's ruling offered him "no mechanism for any future evaluation or determination of whether [the child] would be ready in the future for additional time" with father. The trial court, however, had "expressed [its] hope that there would be a transitionary period" and that "things could get into a situation where he had more time." Nevertheless, the trial court first required the child to attend therapy and work on her relationships with both parents, but especially father. Furthermore, "under Code § 20-108, the parties and the court retain the ability to modify visitation with minor children in the future. This statute is an avenue for the non-custodial parent to seek increased visitation in the event the custodial parent is not accommodating." *Rainey*, 74 Va. App. at 388-89. Thus, father has a mechanism to seek future modification of custody and visitation.

## II. Decision-making authority

Father argues that the trial court erred in awarding mother final decision-making authority over the child's medical matters.

## A. Notice

Father contends that mother "never placed decision-making authority at issue." He asserts that he was "unaware that his right to help decide [the child's] medical treatment was at risk." Both parties, however, had requested "tie-breaking authority" in their respective motions to modify custody and visitation. Both also had requested "any further relief as [the court] deems just and appropriate."

In *D'Ambrosio v. D'Ambrosio*, 45 Va. App. 323, 336 (2005), we found that the trial court properly gave one parent sole authority to choose the child's pediatrician, noting that "[a]lthough [one party] did not request the sole right to select [the child's] pediatrician in her pleadings, she nonetheless prayed that the court grant any other relief it deemed just." This Court found that "the

- 14 -

trial court did not err in fashioning 'an appropriate remedy that comport[s] with the best interest of the children, even [though it was not] specifically requested by the mother or father.'" *Id.* at 338 (alterations in original) (quoting *Cloutier v. Queen*, 35 Va. App. 413, 424 (2001)).

As in *D'Ambrosio*, father was on notice that medical decision-making authority was subject to potential modification because of the parties' pleadings and arguments at trial. Throughout the proceedings, mother discussed her efforts to obtain therapy for the child and father's refusal to cooperate. It is clear from the record that the issue of making decisions regarding the child's therapy was before the trial court.

## B. Best interests

Father also argues that it was not in the child's best interests for mother to have sole decision-making authority regarding the child's medical care. He claims that mother had "a pattern of . . . unilaterally making poor decisions about [the child's] health and upbringing" and often failed to notify him about the child's health or illnesses she had. Father contends that the trial court's decision would prevent him "from having the relevant, necessary information about [the child] in real time, which is against her best interests."

Code § 20-124.1 authorizes a trial court to modify joint legal custody when the court deems it to be "in the best interest of the child." The trial court found that therapy would be beneficial for the child and her relationship with her parents, especially father. The trial court further found that there was not "a good reason why this child did not go to therapy." Mother had testified that she believed that father used "his legal custody as a bargaining chip" and prevented her from taking the child to therapy. In order to break this impasse regarding therapy for the child, the trial court ordered that mother would be the one making medical decisions for the child. We find no abuse of discretion in the trial court's resolution of the problem presented by the parties' inability to resolve their differences. "Custody and visitation disputes between two fit parents involve one parent's

- 15 -

fundamental right pitted against the other parent's fundamental right. The discretion afforded trial courts under the best-interests test, Code § 20-124.3, reflects a finely balanced judicial response to this parental deadlock." *Griffin v. Griffin,* 41 Va. App. 77, 83 (2003). Thus, the trial court did not err in granting mother decision-making authority regarding the child's medical care.

### III. The child's testimony

Father argues that the trial court erred by allowing the child to testify in open court because it was not in her best interest. He emphasizes that the school counselor testified that the child felt "anxious and nervous" about testifying. Further, he argued during the trial that there were other witnesses who could testify about the child and her relationship with mother and father.

"No person who is a party to a [child custody] proceeding—litigant, counsel, or chancellor—relishes the spectacle of a child testifying in open court as to his or her preference for one parent over another." *Brown v. Burch*, 30 Va. App. 670, 680 (1999) (alteration in original) (quoting *Haase v. Haase*, 20 Va. App. 671, 680-81 (1995)). "[I]n determining how to proceed with the receipt of evidence from children in custody cases, the judicial officer . . . should consider the facts and circumstances of the particular case." *Id.* at 681 (quoting *Haase*, 20 Va. App. at 682). "Among the factors to be considered are the age and maturity of the children, the matters to be brought forth in their testimony, the acrimony between the parents, and the likelihood of improper influence by one or both of the parents on the children's testimony." *Id.* (quoting *Haase*, 20 Va. App. at 682). "Based upon the consideration of these factors and others as may be appropriate, the judicial officer should then determine the method of receiving evidence which serves the best interest of the children while preserving to the greatest extent possible the procedural rights of the parents." *Id.* (quoting *Haase*, 20 Va. App. at 682).

Here, the trial court explained at the outset that its practice was for children to testify in open court, as opposed to in chambers. Mother offered for a counselor to testify about the child's

preference, but father did not consent to that compromise. Father argued that it was not in the best interests of the child to testify, and he relied on the school counselor's testimony that the child was "nervous" about testifying. Father's argument that testifying would be "detrimental" to the child was "speculative." *See Haase*, 20 Va. App. at 680. The trial court found that the child's nervousness was "understandable" but did not prevent her from appearing in court.

Once the child appeared in open court, the trial court questioned her and found that she was of sufficient maturity and understanding to express her views regarding the situation. Neither mother nor father objected to the trial court's finding regarding the child's competency. The trial court allowed the child to testify and heard that she preferred to live with mother and visit father when she wanted.

At the conclusion of the child's testimony, the trial court found that the child seemed "comfortable in the proceedings" and it was "helpful to see what the child's view is." The trial court further found that it did not appear that anyone "coached" the child when she testified. There is credible evidence in the record to support the trial court's finding that the child was of sufficient age and maturity to testify and the trial court did not err in having her testify in open court.

### IV. The child's notes

#### A. Review and admission of the child's notes

Father argues that the trial court erred by "improperly" reviewing the child's notes and admitting them as a demonstrative exhibit. He emphasizes that "neither party proffered the notes as an exhibit" and the child did not "request to rely upon her notes to refresh her recollection" when she testified.

The child testified as a witness on the second day of trial. At the end of the second day, after the child exited the courtroom, the trial court informed the parties that it had made a copy of the child's notes and would admit them as a demonstrative exhibit because the child "did adopt" some

of her notes as testimony.  The trial court clarified that "demonstrative means that it has no evidentiary value in and of itself" and that the notes would only be used as "a guide to ask some questions."

Father, however, did not object when the trial court asked the child if she wanted to look at her notes.  He also did not object when the child handed the notes to the judge or when the judge indicated that he wanted to "take a quick look" at them.  Finally, though father objected to the admission of the child's notes when the trial court indicated it intended to receive them as a "demonstrative exhibit," father did not offer a basis for his objection, even after the trial court invited counsel to "protect" the record.  Further, when the third day of trial recommenced several weeks later, after the parties had had a chance to review the notes, father still did not offer a basis for objecting to the trial court receiving the notes as a demonstrative exhibit.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "The purpose of this rule 'is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.'"  *Yazdani v. Sazegar*, 76 Va. App. 261, 276 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 218 (2004)).

In addition, father's argument that the child did not use the notes to refresh her recollection was not raised during the trial.  "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court."  *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)).  Father "has not asked that we apply the 'good cause' or 'ends of justice' exceptions to Rule 5A:18, and we decline to do so *sua sponte*."  *Wardell Orthopaedics, P.C. v. Colonna's Shipyard,*

*Inc.*, 72 Va. App. 296, 303 (2020). Accordingly, we will not consider father's assignment of error regarding the trial court's review or admission of the child's notes.

## B. Reliance on the child's notes

Father argues that the trial court erred by admitting the child's notes as a demonstrative exhibit and then relying on them substantively to determine the child's best interests.

Father objected to the trial court referring to language in the child's notes when it issued its ruling by filing a motion to reconsider. In his motion, father clarified his objection, noting that although the trial court had promised not to assign any evidentiary weight to the child's notes, the trial court "incorrectly relie[d] on the contents in [the child's] notes." Father pointed specifically to the trial court's reliance on the child's feelings about her stuffed animal that were expressed in the notes. On brief, father argues that "[w]hile [the child] wrote about [her stuffed animal] in the notes, there is no supporting testimony or admissible evidence to justify the trial court's finding" that the stuffed animal constituted the child's third "pillar of security." Father avers that the trial court's reliance on the significance of the child's stuffed animal must have been improperly taken from the notes. Father takes issue with the trial court's conclusion that the child felt "threatened" by father's insistence on spending more time with her and that altering the custody order would impinge upon three of the child's pillars of security: (1) the child's relationship with mother, (2) the child's dog Bandit, and (3) the child's stuffed animal.

Father claims that the trial court "erred by basing its ruling on written statements within the notes to which [the child] never testified." He asserts that the trial court's "supplementation of the record with knowledge gleaned from the inadmissible notes' contents that were never testified to by [the child] is an abuse of discretion that warrants its decision to be set aside." To support his assertion, father argues that the child's testimony "did not adopt or incorporate the [circuit] court's supposed findings" about the child's "perception" of father when the child's dog "supposedly

- 19 -

needed to see a veterinarian." The record, however, reflects that on the third day of the trial, after the child testified, *father* was the one who raised the issue of the child's notes. He explained that he had reviewed the child's notes and found them "upsetting" because they did not reflect the child that he knew and saw on visitations. After father testified, the trial court asked him why he thought "some of these things" that the child had said were "inconsistent" with what he saw.[8] In response, father volunteered an explanation about a "specific event" in the child's notes. Father testified about an incident when he did not believe that it was necessary to cancel their plans to take the dog to a veterinary appointment that mother had scheduled without consulting him. Father described the child's statement of him refusing to take the dog to the vet as a "mischaracterization of the event."

Father also asserts on appeal that the trial court's findings reflect its adoption of the child's notes, not her testimony, about her stuffed animal. The record, however, shows that the trial court used the notes as "kind of a guide to ask some questions" and did so by asking father about the child's stuffed animal and whether he questioned her about why she still had it. Father did not object to the court's question, but instead explained that he simply made a comment that she was nine years old and still had the stuffed animal. In doing so, the trial court noted that the child had a negative reaction to his comment.[9] In its ruling, the trial court discussed the incidents about the dog

---

[8] "Admission of items of demonstrative evidence to illustrate testimonial evidence is . . . a matter within the sound discretion of a trial court." *Jackson v. Commonwealth*, 267 Va. 178, 203 (2004) (quoting *Mackall v. Commonwealth*, 236 Va. 240, 254 (1988)). As noted above, father did not properly object to the trial court's decision to receive the child's notes as a "demonstrative exhibit" to "guide" its examination of the witnesses. Therefore, we do not address the propriety of the trial court's use of the notes to prompt certain questions to the witnesses at trial.

[9] Father also attempts to create the appearance of impropriety by pointing out that the trial court concluded that the child felt her "pillars of security" were being "threatened" by father, notwithstanding the fact that the child never actually used the words "threat," "pillars of security," or any variation of either in her testimony. This argument is misguided. The trial court was permitted to conclude, based on ample evidence (including father's own testimony) contained in the record, that the child was concerned about changing her current custody situation and spending more time with father. The trial court's use of a word to describe or characterize how it views a particular factual issue—here, that child felt her custody situation

and the stuffed animal to show how the child's perception of the events differed from father's view. This ruling was therefore not based on the child's notes, but on testimony contained in the record. The trial court confirmed this, stating that father "views what the child said in her testimony as being inconsistent with what is his experience. . . . That's his point of view," thus reinforcing the notion that the trial court relied on the child's *testimony*, as well as father's testimony, not what was contained in her notes. The trial court therefore did not err in basing its custody decision, in part, on the child's perception that her pillars of security were being threatened by father.

## V. Counsel's comments

Father argues that the trial court "improperly considered the factual statements of opposing counsel, effectively giving evidentiary value to those statements." Although father discusses in his brief the various times throughout the three-day trial and at the hearing on his motion to reconsider when counsel made extraneous comments, he failed to show where he preserved his argument that the trial court "improperly" relied on those statements in its ruling. Rule 5A:18. "One of the tenets of Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review." *Perry v. Commonwealth*, 58 Va. App. 655, 666 (2011). "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" *Friedman v. Smith*, 68 Va. App. 529, 544 (2018) (quoting *Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002)).

---

and family dynamic were being "threatened"—is not error. Furthermore, given the child's evident difficulty in confiding her feelings to her father, the trial court's use of the notes to guide questions was not improper. "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977). "[W]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." *Id.* Here, the trial court's use of the word "threatened," notwithstanding the fact that the child did not use that word specifically in her own testimony, was not error.

Moreover, "in a bench trial, the trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." *Cousett v. Commonwealth*, 71 Va. App. 49, 61 (2019) (quoting *Purvis v. Commonwealth*, 31 Va. App. 298, 309 (2000)). Father failed to rebut the presumption and provide evidence showing that the trial court relied on counsel's "continuous commentary and testimonial remarks." "Thus, in the absence of affirmative evidence to the contrary, we are bound by the presumption that the trial court judge, acting as the finder of fact in this case, properly and separately considered only the evidence relevant" to the case. *Id.* at 63.

## VI. Appellate attorney fees and costs

Mother asks this Court to award her attorney fees and costs incurred on appeal. *See O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." *Koons v. Crane*, 72 Va. App. 720, 742 (2021) (quoting *Friedman*, 68 Va. App. at 545). Although mother prevailed, we do not find that father's appeal was "'frivolous or lacked substantial merit,' or that the 'equities of the case' favor an award." *Id.* at 742-43 (quoting Rule 5A:30(b)(3)-(4)). Accordingly, we deny mother's request.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. In accordance with Code § 8.01-428(B), we remand the matter for the trial court to address and correct any clerical errors in the custody and child support order regarding mother's residential address and father's work telephone number.

*Affirmed and remanded.*