*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM L. QUINT III,

      Plaintiff-Appellee,

v

PERLA MARIA QUINT, also known as PERLA
MARIA MASCORRO-RAMOS,

      Defendant-Appellant.

UNPUBLISHED
April 10, 2025
9:57 AM

No. 373152
Ionia Circuit Court
LC No. 2018-033430-DM

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

Plaintiff, William Quint III, and defendant, Perla Mascorro-Ramos, share one minor child, WQ. Plaintiff moved for a change in legal custody and parenting time. The trial court granted plaintiff's motion after an evidentiary hearing, but did so without considering WQ's preference in its best-interest analysis. This Court vacated the trial court's order and remanded the matter for the trial court to reanalyze the best-interest factors, using up-to-date information.[1] Defendant now appeals as of right the order after remand granting joint physical custody, awarding plaintiff sole legal custody of WQ, and changing the parties' parenting time. For the reasons stated herein, we affirm.

## I. FACTS

This Court has already recited the underlying facts of this case, and they need not be repeated here. *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 1-3.

---

[1] *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 8-9.

On remand, in June 2023, the trial court interviewed the minor for approximately 20 minutes, discussing a variety of topics relevant to the minor's young age. The court discussed the issue of custody, and specifically legal custody, but noted that the meeting offered little insight into the issue.

The court then conducted an evidentiary hearing that took place over the course of three days during the summer of 2024.[2] Plaintiff testified that WQ had adjusted to the new parenting-time schedule, his school performance had improved, he had no unnecessary school absences, and there were no adverse effects from the change. Plaintiff testified that he and defendant took different approaches to WQ's medical care. Whereas plaintiff would wait a day or two to see if WQ's cough, congestion, or sore throat would clear up, defendant wanted to take the child for medical treatment the same day that he started coughing. Defendant agreed with that characterization and said that she had taken WQ to the emergency room "[m]any times" since September 2023. Plaintiff said that defendant often did not tell him when she was taking WQ to the doctor. He would learn about it when he got a text message summarizing the visit or a voice mail from the pharmacist informing him that WQ's prescription was ready for pickup. Plaintiff denied defendant's accusation that he did not bathe or shower WQ often enough. Plaintiff conceded that he once forgot to put WQ's booster seat in his truck and drove the boy home without it. He explained that defendant intentionally prolonged parenting exchanges and video recorded everything, and he just wanted to get away as quickly as possible.

Defendant sought to introduce into evidence four videos that she took during parenting-time exchanges. Of these, the trial court admitted two. In one, plaintiff is heard saying to defendant, "[Y]ou ruin everything." The second video showed plaintiff leaving a parenting-time exchange without having a car seat for WQ, who was not old enough, tall enough, or heavy enough to ride in a vehicle without a car seat; defendant called the police to report the incident. Defendant also testified that she reported plaintiff to Children's Protective Services (CPS) twice since September 2023. A CPS investigator testified that none of the complaints against plaintiff had been substantiated and that her investigation of one of the complaints left her with no concerns about WQ's well-being when in plaintiff's care.

Defendant testified that she took WQ with her to church on the Sundays in which she had custody and that he was scheduled to begin preparations to take First Communion in 2024. Defendant recalled an incident when she parked on the road in front of plaintiff's house to pick up WQ for what should have been her parenting time, and plaintiff threatened to call the police, alleging that she was trespassing.[3] She said that plaintiff had threatened to call the police on her three times since the September 2023 order. Defendant admitted that she video recorded some parenting-time exchanges, but testified that she did not record them all. She also admitted that she

---

[2] The evidentiary hearing began on July 25, 2024, resumed on August 22, 2024, and concluded on September 6, 2024.

[3] Based on the testimony of the parties, this incident appears to have arisen out of confusion between the parties, after remand from this Court, as to whether the parenting time schedule would revert back to the schedule originally ordered by the trial court, as opposed to the schedule ordered on September 22, 2023 (i.e., the order that was vacated by this Court).

recorded some of the time she spent at the hospital during WQ's recent tonsillectomy. Defendant said that she had been diagnosed with depression since her parenting time had been changed and that she was seeing a therapist and taking antidepressant medication.

The trial court based its decision on its review of the transcript of the September 6, 2023 hearing on plaintiff's custody and parenting-time motion, the court's interview of the child, and any up-to-date information that the parties brought to the court's attention during the hearing on remand. The trial court found that six of the best-interest factors favored both of the parties: specifically, MCL 722.23(a) (love, affection, and emotional ties to child); MCL 722.23(c) (capacity and disposition to meet child's material needs); MCL 722.23 (e) (permanence as a family unit); MCL 722.23(g) (mental and physical health of parties); MCL 722.23(h) (home, school, and community record), and MCL 722.23(i) (child's preference). The court found MCL 722.23(k) (domestic violence) inapplicable.

The trial court found that the following factors favored plaintiff: MCL 722.23(b) (capacity and disposition to give child love, affection, guidance, and to continue religious training when applicable); MCL 722.23(d) (length of time in stable environment, desirability of maintaining continuity); MCL 722.23(f) (moral fitness of the parties); MCL 722.23(j) (willingness and ability of each party to facilitate close and continuing relationship between child and other party); and MCL 722.23(l) (any other relevant factor). Regarding MCL 722.23(l), the trial court noted that defendant "simply does not agree with most any decision made by the plaintiff father, particularly, as it relates to medical issues." The court noted that even simple issues such as hygiene or the amount of time that WQ spent with his paternal grandparents were problematic for defendant. In addition, the court concluded that many of defendant's grievances about health, hygiene, and appointments with medical care providers, and her own status as it relates to those appointments, which were not corroborated, were devoid of merit.

Except for defendant's testimony that she was undergoing mental-health treatment, on the basis of which the trial court found that MCL 722.23(g) favored both parties, the parties' updated information did not alter the court's earlier best-interest analysis. As it pertains to the instant appeal, the trial court again ordered the parties to share joint physical custody and granted sole legal custody to plaintiff. During the school year, plaintiff's parenting time remained Monday through Friday, with defendant afforded parenting time on Wednesdays from 5:30 p.m. to 6:00 p.m. The parties would continue to alternate weekend parenting time. Defendant now appeals.

## II. ANALYSIS

### A. SUFFICIENCY OF FINDINGS

Defendant first asserts that the trial court erred by changing legal custody without sufficient findings under MCL 722.23. We disagree.

"To expedite the resolution of a child custody dispute by prompt and final adjudication," this Court must affirm all orders and judgments of the circuit court pertaining to a child custody dispute "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. A

trial court's factual finding is against the great weight of the evidence when it is so contrary to the weight of the evidence that it is unwarranted or is so plainly a miscarriage of justice that it would warrant a new trial. *Fletcher v Fletcher*, 447 Mich 871, 878-879; 526 NW2d 889 (1994). A palpable abuse of discretion exists when a trial court's discretionary ruling, such as the court's custody decision, "is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). "Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law." *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020) (quotation marks and citation omitted). This Court reviews de novo the trial court's application of the law to the facts, see *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015), and gives deference "to the trial court's factual judgments and special deference to the trial court's credibility assessments," *Brown*, 332 Mich App at 9.

To determine whether joint custody is in the best interests of a child, a trial court must consider the best-interest factors enumerated in MCL 722.23 and make specific findings of fact regarding each of the factors. *Johnson v Johnson*, 329 Mich App 110, 128-129; 940 NW2d 807 (2019). "[B]rief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001), citing MCR 2.517(A)(2). The record need only be sufficient for the appellate court to determine whether the evidence clearly preponderates against the trial court's findings. See *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005).

Review of the trial court's opinion and order shows that the trial court made "brief, definite, and pertinent findings" about the contested factors, MCR 2.517(A)(2), and that the court's findings were stated in enough detail for this Court to determine whether the evidence clearly preponderated against the trial court's findings, see *id*. Although the trial court did not repeat its findings from the September 6, 2023 evidentiary hearing, the court stated multiple times that it was incorporating those findings into its new best-interest analysis. In addition, the trial court expressly addressed updated information provided by the parties, at length. Under each of the best-interest factors that the court found to favor plaintiff, the trial court specified the updated facts that supported its conclusion.

Defendant's argument focuses less on whether the trial court's findings were sufficient than on whether the trial court properly weighed the evidence. In particular, defendant contends that the trial court failed to adequately assess MCL 722.23(h) and MCL 722.23(j). From our review of the record, we conclude that the trial court's determination that MCL 722.23(h) favored both parents was not against the great weight of the evidence. The parents' testimonies established that they were involved in the child's schooling, followed his progress, kept up with his school events, and attended parent-teacher conferences and other such meetings. Regarding MCL 722.23(j), this Court held in its previous decision that the trial court's conclusion that this factor favored plaintiff was not against the great weight of the evidence. The evidence on remand showed that defendant video recorded parenting exchanges, reported plaintiff to CPS twice after the trial court's September 2023 custody order, took issue with practically every decision that plaintiff made about WQ's healthcare and hygiene, and generally demonstrated antagonistic behavior towards plaintiff. The trial court believed that defendant's actions evinced a distrust of plaintiff and suggested that she may despise him and his decisions pertaining to the minor. On this record,

defendant has not shown that the trial court's conclusion with respect to MCL 722.23(j) was against the great weight of the evidence.

## B. BURDEN OF PROOF

Defendant also contends that the trial court committed clear legal error by not holding plaintiff to the burden of proving by clear and convincing evidence that the change in parenting time was in WQ's best interests. Again, we disagree.

If an established custodial environment exists, then a trial court may not modify its previous judgments or orders so as to change that established custodial environment unless presented with clear and convincing evidence that the proposed order is in the best interest of the child. MCL 722.27(1)(c). A child's custodial environment "is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." *Id.* An established custodial environment is "both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence." *Kuebler v Kuebler*, 346 Mich App 633, 669; 13 NW3d 339 (2023) (quotation marks and citation omitted). Evidence is clear and convincing if it is "so clear, direct, and weighty" that the fact-finder can "come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re ASF*, 311 Mich App 420, 429; 876 NW2d 253 (2015) (quotation marks and citation omitted).

The trial court found that WQ had an established custodial environment with both parents and that the proposed changes would not affect the established custodial environment. Nevertheless, the trial court decided to apply the higher burden and require clear and convincing evidence. Pursuant to MCL 722.27(1)(c), "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."

On remand, plaintiff testified that WQ had adjusted "[r]eally well" to the new parenting schedule, that his performance after the change had been "[r]eally good," that he was "excelling in math" and had "just improved a lot" in school, and that he did not have any excessive absences. Plaintiff also indicated that there had been no adverse physical effects from the parenting-time change. No evidence was presented to dispute this testimony. Testimony from the CPS worker confirmed that defendant had made multiple reports of abuse involving plaintiff, none of which were substantiated, which led to the minor having to undergo at least one interview with CPS. The court also made clear that it considered the evidence presented at the evidentiary hearing in 2023, which included testimony that defendant had been so disruptive at a dental appointment, where she fabricated claims of an assault against an employee and then called the police, that she had been banned from the premises, which also included the minor's physician's office. Other evidence demonstrated that her disruptive interactions with adults the minor must interact with, including video recording those interactions on a regular basis (e.g., during medical settings and custody exchanges), were contrary to proper guidance for the minor. Further, the court noted testimonial and video evidence demonstrating defendant's antagonistic behavior toward plaintiff. Thus, evidence before the trial court was clear and convincing that the change in parenting time was in the child's best interests.

Because the evidence was clear and convincing that the change in parenting time was in WQ's best interests, we need not consider defendant's contention that the trial court erred by not considering the effect of the change in parenting on the child's established custodial environment with defendant. The trial court concluded that the change in parenting time would not change the established custodial environment because WQ would continue to look to both parents for love, affection, guidance, discipline, and parental comfort. But even if it did, a change in parenting time that affects an established custodial environment is permissible as long as the evidence is clear and convincing that the change is in the child's best interests. See MCL 722.27(1)(c).

## C. ERRORS INVOLVING EVIDENCE

Next, defendant argues that the trial court erred by excluding evidence of plaintiff's parental alienation and by giving too much weight to an incident that happened in the child's dentist's office in April 2023. Once again, we disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). An abuse of discretion occurs when a trial court selects an outcome outside the range of principled outcomes. *Id.*

Defendant cites several places in the record where she claims that the trial court excluded admissible evidence relative to parental alienation. However, her citations to the record do not support her claim for several reasons, including that: there is no discussion of evidence at the place cited; video evidence was excluded under MRE 901 after defendant failed to establish the date of the recording; the evidence was excluded under MRE 403 because it was needlessly cumulative; or the evidence was actually admitted and defendant's citation is to her attorney's discussion of the evidence. In short, defendant has not established that the trial court erred by excluding evidence of parental alienation.

Defendant also fails to establish that the evidence preponderated in the opposite direction of the trial court's findings because the court gave too much weight to an incident that occurred in the child's dentist's office that resulted in a police report and a ban on defendant from entering the building. In support of that assertion, defendant quotes language from this Court's decision in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003), that does not actually appear anywhere in that opinion. Regardless, contrary to defendant's assertion, the record does not suggest that the trial court gave dispositive weight to the incident at the dentist's office. The incident at the dentist's office factored into the court's best-interest analysis, as did testimony on remand that defendant needlessly filed CPS complaints against plaintiff, that she took WQ to the emergency room or an urgent care facility "multiple times," and that she recorded parenting-time exchanges with plaintiff as well as some part of WQ's tonsillectomy appointment. The trial court's ruling shows that the court considered the updated information presented by the parties, including evidence of plaintiff's alleged misconduct or neglect. The court was not required to address every piece of evidence and every argument in its findings under the best-interest factors. See *MacIntyre*, 267 Mich App at 452. For these reasons, and deferring to the trial court's credibility determination,

we conclude that defendant has not shown that the record evidence preponderated in the opposite direction of the trial court's findings.[4]

## D. UNPRESERVED ERRORS

Defendant further argues that the trial court erred by failing to make a record of its *in camera* interview of WQ and to properly weigh WQ's preference. We find no error. This issue comes to us unpreserved. We review unpreserved issues in child custody cases under the plain-error standard. *Quint*, ___ Mich App at ___; slip op at 7. To show a plain error that requires reversal, a party must first show that an error occurred, that it was plain, i.e., clear or obvious, and that it affected the substantial rights of the child who is the subject of the child custody proceeding. *Id*. If the trial court's plain error affected the child's substantial rights, then this Court must exercise its discretion by determining whether to reverse. *Id*. Reversal is warranted when the plain error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*.

Defendant contends that the trial court failed to make an adequate record because the court did not have a court reporter present during the interview to make a record of the interview. In support of her position, she relies on *Molloy v Molloy*, 247 Mich App 348; 637 NW2d 803 (2001). Her reliance is misplaced. This Court held in *Molloy*, 247 Mich App at 351-352, that all *in camera* interviews of children in custody cases must be recorded and sealed for appellate review; however, our Supreme Court vacated that section of the opinion, i.e., the section holding that such interviews must be recorded (Section III), stating: "We VACATE that section and any other statement in the opinion insofar as it [held] that all further *in camera* interviews with children in custody cases 'shall be recorded.' " *Molloy v Molloy*, 466 Mich 852; 643 NW2d 574 (2002). Subsequently, the Supreme Court adopted MCR 3.210(C)(5), which governs interviews of children in custody matters. MCR 3.210(C)(5) allows a trial court to interview a child "privately to determine if the child is of sufficient age to express a preference regarding custody, and, if so, the reasonable preference of the child." The trial court is to apply the information received at the interview "only to the reasonable preference factor." MCR 3.210(C)(5). Defendant's brief simply ignores both the Supreme Court's decision in *Malloy* and the court rule.

The trial court in the present case stated that it interviewed WQ for 20 minutes, found that the interview "offered little insight" into the child's preference regarding legal custody, and concluded that MCL 722.23(*i*) favored neither party. MCR 3.210(C)(5) did not require a court reporter or the parties' attorneys to be present. To the extent that defendant implies that safeguards were needed to protect her due-process rights, "this Court has concluded that due process, in the context of custody disputes, permits *in camera* interviews of children for the limited purpose of determining their parental preference." *In re HRC*, 286 Mich App 444, 452; 781 NW2d 105

---

[4] To be clear, we are not suggesting that it would have been error for the trial court to give even greater weight to the incident that occurred at the dentist's office. Multiple witnesses testified that defendant essentially threw herself to the ground in order to stage an incident there, all while her son was in a nearby room for dental services, and then summoned the police to the scene. While she testified that she had been pushed, the trial court did not find her credible. The court noted multiple such occasions where defendant exhibited disruptive behavior when she was unable to dictate events.

(2009). Defendant has not argued, nor does record evidence suggest, that the trial court used information from the *in camera* interview for anything other than the limited purpose of determining the child's preference under MCL 722.23(*i*).

In addition, the trial court's findings with respect to its interview were "brief, definite, and pertinent," as required by MCR 2.517(A)(2), and were adequate for purposes of determining whether the evidence preponderated in the opposite direction. It is adequate for a trial court to state that it considered the child's preference under MCL 722.23(*i*). See *MacIntyre*, 267 Mich App at 458. Further, the fact that MCL 722.23(*i*) favored neither party is consistent with the trial court's conclusion that MCL 722.23(a) favored both parents equally as well as with the child's young age. Having equal bonds of love, affection, and other emotional ties to each parent might leave a seven-year-old child unconcerned about which parent made decisions about his medical care or which school he attended. See *Quint*, ___ Mich App at ___; slip op at 8. As to defendant's implication that the trial court improperly minimized WQ's preference, WQ's preference was to be evaluated along with all the other relevant evidence that went into making a best-interest determination. See *id*. A trial court is not required to give equal weight to all the best-interest factors; it may consider the relative weight of the factors as appropriate to the circumstances. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006).

Also unpreserved is defendant's claim that the trial court erred by not sua sponte vacating the child support order that reflected the order changing parenting time that this Court vacated. The court has discretionary authority to modify child support awards as the circumstances of the child and the parties require. MCL 552.17(1). However, such modifications are usually triggered by a petition or motion by one of the parties. See, e.g., *Brendel v Morris*, 345 Mich App 138, 149; 4 NW3d 776 (2023); *Calley v Calley*, 197 Mich App 380, 382; 496 NW2d 305 (1992). Defendant has cited no applicable law requiring a trial court to modify a child support order sua sponte under the circumstances presented here. Instead, defendant's brief cites to a case that does not exist.[5] Because defendant has not established that the trial court committed error that was clear or obvious, her claim of error fails.

### E. EXPANSION OF THE RECORD ON APPEAL

Defendant asks this Court to expand the record on appeal by admitting a report issued in the context of a parent-teacher conference held after the trial court entered its order following remand. MCR 7.216(A)(4) permits this Court to allow additions to the record on terms that the Court deems just. Under MCR 7.216(A)(5), this Court may remand a case to the trial court to allow the court to take additional evidence. We decline to do either. Defendant does not argue that admitting the report to which she refers would provide grounds for disturbing the trial court's order. In addition, it is not clear exactly what defendant seeks to admit: a written report, evidence of an oral report from the teacher, or performance data that the teacher interpreted to show a decline in academics.[6] Given these uncertainties, we would not deem it just to expand the record to admit

---

[5] In total, defendant's brief cites to five cases that do not exist, i.e., at least five citations in defendant's brief are fake.

[6] Defendant offers no description or quantification of this alleged academic decline.

the report. Likewise, remanding the matter to the trial court on the basis of defendant's vague assertion is contrary to the Legislature's intent to "expedite the resolution of a child custody dispute." MCL 722.28.

## F. REMAINING ERRORS

Lastly, defendant raises two arguments for the first time in her reply brief. Specifically, defendant argues that the trial court erred by not referring the parties to counseling or mediation before granting plaintiff sole legal custody and that judicial bias contributed to the trial court's omission of defendant's evidence of plaintiff's parental alienation. Reply briefs may contain only rebuttal argument, and raising an issue in a reply brief is not sufficient to properly present an issue for appeal. MCR 7.212(G); *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Nevertheless, having reviewed these claims of error, we find them without merit and decline to address them further.

## G. CONCLUSION

In conclusion, defendant has not established that the trial court "made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. Therefore, we are required to affirm the trial court's order after remand.

Affirmed.

/s/ Michael F. Gadola
/s/ Randy J. Wallace
/s/ Matthew S. Ackerman